In the Matter of the Estate of ELIZA J. RASMUSSEN, Deceased.

Surrogate's Court, Kings County, May 10, 1933.

*Henry D. Barmore*, for the petitioner.

*Mahon & Mahon*, for Helen Mackey.

*Abner C. Surpless*, special guardian.

WINGATE, S. A somewhat novel situation in respect to the rights arising from a tentative savings bank trust, popularly known as a " Totten " trust, is presented by the case at bar. The undisputed facts, in so far as pertinent, disclose that on or about the 9th of June, 1904, the decedent opened a savings account with the City Savings Bank of Brooklyn in her name " in trust for Helen Mackey." The named beneficiary is the widow of a deceased nephew of the depositor, and was apparently on terms of close intimacy and friendship with the depositor. The account was, from its inception, extremely inactive, only eighteen withdrawals having been made by the decedent between 1914 and the date of her death. The account shows a gradual but substantially continuous growth, largely through the additions of interest credits.

On April 22, 1930, the depositor was adjudged an incompetent and a committee was duly appointed for her. At the time of such appointment the balance in the trust account amounted to $1,129.31.

On July 21, 1930, the committee transferred the funds in the trust account, then amounting to $1,142.01, to a general account in the Ridgewood National Bank opened in his name as fiduciary.

The decedent depositor died on December 31, 1931, and letters of administration upon her estate were granted by this court to the present accountant on January 12, 1932. After her death, the committee of the incompetent accounted, and turned over to the administrator the sum of $6,839.46 in cash. This included the proceeds of the trust savings account which had thus been commingled with the other funds of the incompetent.

In this proceeding the named beneficiary of the savings bank trust asserts a claim to the proceeds of this account, with interest thereon from the date that the account was closed by the committee.

At her death the decedent had no immediate relatives, her distributees being certain nephews and nieces and grandnephews and nieces.

The rule of *Matter of Totten* (179 N. Y. 112), in which the modern doctrine of savings bank trusts had its inception, provides, in

substance, that the opening of an account similar to that here in question effects the erection of a tentative trust, which is subject to revocation by the depositor at any time prior to his death, and that a fixed trust is constituted only in respect to the funds which remain in the account at the death of the depositor unless some previous act of fixation has been accomplished by him.

The questions here presented, therefore, concern, *first*, the power of a committee of an incompetent to perform an act of revocation on behalf of the incompetent; and *second*, whether an act of withdrawal, such as here took place, is sufficient to destroy the tentative trust and prevent it reaching fruition upon the death of the incompetent depositor.

The powers and rights of a committee of the property of an incompetent have not been fully defined by statute (See Civ. Prac. Act, § 1377), and the authoritative decisions of the courts of the State do not completely indicate the limits of his authority. On the one hand, it was held in *Viets* v. *Union National Bank of Troy* (101 N. Y. 563, 569) that the right of possession of the estate of the lunatic vests in his committee upon appointment and that the appointee " occupies the same position and fills the same place as the lunatic in regard to his personal estate and property. He has the same control and possession thereof, and in all ordinary matters the right to deal therewith, as the lunatic enjoyed before he was found to be of unsound mind."

Conversely, the Court of Appeals points out in *People ex rel. Smith* v. *Commissioners of Taxes* (100 N. Y. 215, at p. 218): "A trust is no doubt discharged by a committee of the estate of a lunatic, but the trust is in the court, and the committee acts under its appointment as agent, officer or bailiff. Through him the court must preserve the property intrusted to it and therewith maintain the lunatic and his family. But the lunatic is not divested of his estate or property rights, and the legal title thereto remains as before. Nothing has been taken from him but its control and management."

Certain it is that the committee does not by reason of his appointment become the *alter ego* of the incompetent, since it has been held that rights of election possessed by the incompetent cannot be exercised by a committee. (*Camardella* v. *Schwartz*, 126 App. Div. 334, 336; *Walter* v. *Walter*, 170 id. 870, 873; affd., 217 N. Y. 439, 443; *Mainzer* v. *Avril*, 108 Misc. 231, 233; *Matter of Grant*, 122 id. 491, 492.)

In *Matter of Wainman* (121 Misc. 318) the court in a well-reasoned opinion, after an examination of pertinent authorities, reaches the result (at p. 320): "A careful reading of these decisions

leads to the conclusion that they apply to ministerial acts; the protection of the estate; the collecting of the assets; and the caring for the incompetent according to his station in life; but that it does not confer upon the committee a discretionary power to change an act performed by the incompetent before he was afflicted with the disability and deprive the beneficiary of that act and of a right conferred by the incompetent when he was mentally qualified to confer it, and thus perhaps prevent the performance of an act that the incompetent would insist on having performed if he had retained his natural faculties.

" The law never intended that a committee should be clothed with power to deprive a wife of the benefits of an act of love and affection, performed by the husband when his mental faculties were active, based on the proposition that now he cannot speak intelligently for himself; and, therefore, the committee has the right to step in and nullify the act, which common knowledge shows to be the usual incident relative to the marriage relation. The committee, therefore, was and is without power, either by overt act or otherwise, to change the beneficiary of the policy."

This court is in accord with the statement of the limits of the authority of a committee, as indicated in this excerpt. In its opinion, the function of the committee is purely that of a conservator of the property of the incompetent with the power, subject to the control and direction of the Supreme Court, of applying such portions thereof for his welfare and the welfare of his dependents as may be necessary. Further than this his powers do not go.

It follows from the foregoing, that the ability of the committee to alter the status, or the relationship of the decedent, or any other person, to any particular property of the incompetent would be limited to the necessities of the case and the requirements of the incompetent and his dependents. It would, therefore, be beyond his power, in a case like the present, where the use of the proceeds of the tentative trust account were not required for the needs of the incompetent, to alter the relation of the various interested parties which existed at the time of his appointment, in respect thereto. It would have been entirely possible for the committee to have performed all necessary duties of custodianship, in respect to this particular account, by merely retaining possession of the bank book, which constituted the indicia of ownership. That by going further and actually destroying the relationship then existing, he exceeded his powers in a manner which has operated detrimentally to the present claimant and in equal measure to the incompetent who intended to dedicate this particular fund to the claimant, seems obvious from the fact of the maintenance by the

decedent of the savings account for approximately a quarter of a century in the form in which it was found by the committee.

Had the use of any portion of these funds been necessary for the welfare of the incompetent, an entirely different situation would have been disclosed, and a different result would follow. Such facts would require a solution similar to that attained by the Court of Appeals in *Matter of Ireland* (257 N. Y. 155), which held that a specific legacy was adeemed by the sale of the subject-matter by the committee of the incompetent testator, where the use of the proceeds was necessary for his support and maintenance.

It is contended by the claimant that the provisions of section 1383 of the Civil Practice Act are conclusive as to her right, without more. This section reads in part: " Where a person, of whose property a committee has been appointed, as prescribed in this article, dies during his incompetency, the power of the committee ceases; and *the property of the decedent must be* administered and *disposed of as if a committee had not been appointed.*" (Italics not in original.)

If the last clause of this sentence be given its literal meaning, it would follow that the administration of the estate of the deceased incompetent would take place in substantially the same manner as if her death had occurred at the time of the adjudication of incompetency, subject, however, to the deduction of such sums or items of property as had been necessarily employed by the committee for the upkeep and welfare of the incompetent between the date of adjudication of incompetency and the death.

However this may be, the court is satisfied on the facts in this case that the intention of the decedent will be best served by a determination that the committee was incapable of exercising the requisite election to terminate the tentative trust, under the rule in *Matter of Totten.* Since the avails of the account may readily be traced into the funds now in the hands of the administrator, it follows the relief prayed for must be granted. The claim of the tentative *cestui que trust* will be sustained, and the administrator directed to pay her the sum of $1,142.01 with interest from the 21st of July, 1930, at the rate paid by the City Savings Bank during the interval; in other words, the situation will be restored to that which would have existed had the savings account been permitted to remain undisturbed.

Proceed accordingly.