[1] Reported in 2 N.W.2d 140.
In 1908 Mrs. Nellie H. Overpeck opened a savings account in her own name by the deposit of $30 in the State Savings Bank in St. Paul, which by a consolidation was taken over by the First National Bank of St. Paul. Thereafter she made numerous deposits to the credit of and withdrawals from the account. All the money deposited belonged to her.
About May 9, 1928, after consultation with the officers of the bank, she changed the designation of the account. She wanted to retain absolute ownership and control over the account during her lifetime and at her death to give it to her daughter Florence E. Rickel, who was then unmarried. During her lifetime Mrs. Overpeck *Page 578 
definitely did not want her daughter to have any interest in or control over the account. Accordingly, the designation of the account was changed to "Nellie H. Overpeck in Trust for Florence E. Overpeck" under an agreement with the bank that Mrs. Overpeck was to have the right to revoke the designation and withdraw the deposits and that any balance remaining in the account at her death should belong to Florence.
Both prior and subsequent to the change of designation, Mrs. Overpeck had possession of the bankbook and exclusive control of the account.
On January 29, 1937, her daughter May. O. Peck was appointed guardian of the person and estate of Mrs. Overpeck, who had become insane, as an incompetent person. The probate court ordered that the ward be cared for in her own home. It made a temporary order on January 29, which it made permanent on March 22, 1937, authorizing the guardian to expend $150 per month for the maintenance and operation of the home. By its terms, the allowance did not cover taxes, compensation of physicians, and services rendered by the guardian. The ward's daughters Florence E. Rickel and Nell Walsh were served with notice of hearing, in which they participated and objected to the expenditures in question.
During the period from January 1937 to March 1, 1939, pursuant to orders of the probate court, the guardian incurred expenses for the care of the ward. She filed an intermediate account covering this period, in which she charged herself with personal property "per inventory" and a petition to have the account settled and allowed. After due notice, a hearing was had in which the appellant, Florence E. Rickel, participated and opposed the allowance of the account. On May 13, 1939, the probate court ordered that the account was "finally settled and allowed"; but it did not include therein "anything for fees and indebtedness to guardian and attorney," the amount of which was "left for future determination when presented to the court." No appeal was taken from the order. *Page 579 
It then appeared that sufficient funds of the ward could not be secured to pay the expenses already incurred and for her future care and support by withdrawal of the money in the ward's other bank accounts aggregating $1,065.71, by the sale of her personal property, including her household goods, furniture, clothing and jewelry, and by placing a mortgage on her homestead. To secure needed funds, the guardian thereupon petitioned the probate court for leave to revoke the tentative trust of the bank account and apply so much thereof as might be necessary for expenses of the guardianship. After due notice, there was a hearing on the petition. The daughter Florence E. Rickel objected. Among other grounds of objection, she claimed that the trust was irrevocable and that the ward was incapable of appreciating the care and comfort proposed to be given her and could be cared for as well and at much less cost in a state insane asylum. On May 17, 1939, the probate court ordered that, after exhaustion of the other assets mentioned, the guardian was authorized to make withdrawals on the tentative trust bank account to pay for the care and maintenance of the ward, her debts and obligations, and the expenses of the guardianship, and authorized the guardian "to do everything necessary and required to make and secure such withdrawals * * * when and as required for the purposes above mentioned."
Pursuant to the order of the probate court, the guardian made numerous withdrawals on the tentative trust bank account until it was finally exhausted. Then the account was closed. From time to time the guardian filed partial revocations as well as a total revocation of the trust covering the withdrawals. By order the probate court approved and confirmed the "partial and total disaffirmance of the so-called tentative trust."
The guardian then filed a statement that she was entitled to $3,280 for her services and expenses and also $1,000 for the services of her attorney. She withdrew from the tentative trust account sufficient funds to pay these items. With the approval of the probate court, she held this money in reserve for that purpose pending *Page 580 
final decision of the matter and deposited it in a separate bank account.
Then the guardian filed another account for the period from March 1, 1939, to June 1, 1939, in which she claimed compensation for herself and her attorney. Notice of hearing thereon was given. Florence E. Rickel appeared and objected to the allowance of the account upon the grounds, among others, that there were assets in the guardian's hands other than the tentative trust bank account available for the payment of the guardian's claims, consisting of a promissory note listed in the inventory of which the guardian was the maker.
The note was executed on January 2, 1923, in favor of her father, Reuben A. Overpeck, for $3,097.18, payable one year from date and bearing four per cent interest. The father died in November 1923, and the note became the property of the ward under the final decree in the probate of his estate. The note became outlawed in January 1930, over seven years prior to the guardian's appointment.
The outlawed note was listed in the inventory and appraised as worthless, presumably upon the ground that the guardian was no longer liable thereon, because it had been so long outlawed. The order of May 13, 1939, approved and settled the guardian's account from January 1937 to March 1, 1939, showing that she had charged off the note thus listed and appraised.
The probate court overruled the objections and allowed and settled the guardian's account, subject to a surcharge of $940 not here material. Meanwhile a writ of certiorari was issued by the district court to review the orders authorizing the guardian to withdraw money from the tentative trust account and hold funds in reserve to pay the representative's charges and her attorneys' fees. An appeal was taken to the district court from the order allowing and settling the guardian's account as surcharged. The appeal and the writ of certiorari were heard together. The district court affirmed the order of the probate court and vacated *Page 581 
and discharged the writ of certiorari. These appeals bring up for review those orders.
Subsequent to the trial below in September 1940 the ward died.
The questions presented for our consideration are whether the deposit upon tentative trust was revocable, the probate court had jurisdiction to order the revocation, there was abuse of discretion in ordering the revocation, the guardian became indebted to the ward's estate in virtue of her appointment as such for the amount of the outlawed note, and the guardian should be charged as having retained the amount of the outlawed note against the amounts due to her for the expenses.
1. A deposit in a savings account in the name of the depositor as trustee for another with the right to withdraw the whole or any part thereof or otherwise revoke the trust creates a tentative trust only, valid under our statutes, which is revocable by the depositor during his lifetime and enforceable by the beneficiary as an irrevocable trust only after the depositor's death. Coughlin v. Farmers M. Sav. Bank,199 Minn. 102, 272 N.W. 166; Walso v. Latterner, 140 Minn. 455,168 N.W. 353; Id. 143 Minn. 364, 173 N.W. 711; Restatement, Trusts, § 58.
There can be no doubt that a tentative trust revocable at the will of the depositor was created in the instant case. Absent other manifestation of intention, the inference from the act of making the deposit is that the depositor intended to reserve the power to revoke the trust. See also 1 Scott, Trusts, § 58.1; Restatement, Trusts, § 330, comment d. Here, we have not only such an inference uncontroverted, but also uncontradicted extrinsic evidence that such was the intention of the depositor.
2. The court having jurisdiction of guardianships of incompetent persons has the power to order on behalf of an incompetent ward the revocation of a tentative trust of a savings account. Where the depositor becomes insane and it is necessary for his proper care and support, the court may order a tentative trust revoked. Ganley v. Lincoln Sav. Bank,257 App. Div. 509, *Page 582 
13 N Y So.2d 571; Brooklyn Trust Co. v. Smart, 161 Misc. 857,293 N.Y. S. 823.
3. Under Minn. Const. art. 6, § 7, the probate court has jurisdiction over persons under guardianship. Such jurisdiction includes the care, protection, and disposition of the property of incompetent wards. The power to care for and protect the ward's property comprehends the exercise of any right of the ward with respect to his property interests which he might exercise if competent. For example, the probate court may exercise such jurisdiction to order an election on behalf of an incompetent person to take under or against the provisions of a will, In re Estate of Carey, 194 Minn. 127, 260 N.W. 320; Washburn v. Van Steenwyk, 32 Minn. 336, 20 N.W. 324; State ex rel. Martin v. Ueland, 30 Minn. 277, 15 N.W. 245, and to direct a guardian to require a bond to secure the bank deposits of his ward. Snicker v. Byers, 176 Minn. 541, 224 N.W. 152.
The revocation of a tentative trust of a savings account is but an exercise of the depositor's rights in the account. While decision need not be put on such a narrow ground, there is striking analogy between an election to take under or against a will and a decision to revoke a tentative trust. Both involve a choice by which one of two alternative rights is accepted and the other rejected. Election with respect to a testamentary provision is a choice either to reject it, thereby nullifying such provision, or to accept it, thereby giving it full effect. Decision to revoke a tentative trust involves a choice either to repudiate and terminate it or to confirm it during the depositor's lifetime and permit it to become irrevocable at his death.
The revocation of a tentative trust pursuant to order of the probate court has the same effect as if it had been done by the ward herself free from the disability of incompetency. In Washburn v. Van Steenwyk, 32 Minn. 336, 356, 20 N.W. 324, 330,supra, we said: "An election by a court in behalf of its insane ward must stand for and be considered as the election of the party himself. *Page 583 
Whether made by a party in person, or by a court having authority to act in his stead, the result must be the same."
The exercise of the probate court's jurisdiction to order a revocation on behalf of a ward does not involve a controversy between the ward and third parties. That the exercise of probate jurisdiction affects rights of the ward and of others also does not affect the court's power to act. An election on behalf of a ward to take under or against the provisions of a will affects not only the rights of the ward, but of others also who are concerned in the distribution. The effect upon the rights of others in such cases is a mere incidental result of the exercise of undoubted power of the probate court.
The revocation of a tentative trust on behalf of a ward by the probate court is not the exercise of jurisdiction over a trust. Of course the district court has exclusive jurisdiction over trusts and trustees under Mason St. 1927, §§ 8100 to 8106;Id. 1940 Supp. §§ 81.00-11 to 8100-16. The act of revocation is simply an exercise of the ward's right to prevent the trust from becoming irrevocable. It stands upon the same basis as the right of election considered in In re Estate of Carey,194 Minn. 127, 260 N.W. 320, supra; Washburn v. Van Steenwyk,32 Minn. 336, 20 N.W. 324, supra; State ex rel. Martin v. Ueland,30 Minn. 277, 15 N.W. 245, supra.
4. The best interests of the ward should be the decisive factor in making any choice on his behalf. In re Estate of Carey, 194 Minn. 127, 260 N.W. 320, supra. The primary duty of the guardian is to the ward. In In re Guardianship of Strom,205 Minn. 399, 405, 286 N.W. 245, 249, where the application of an aged incompetent person's property for his care and support was involved, we said that the ward's "physical comfort and general welfare in these her declining years should be his [the guardian's] controlling objective." It has been held that the court may direct the guardian "to act * * * in accordance with what the court finds would, in all probability, have been the choice of the incompetent if he had been of sound mind." In re Will of Hills, 264 N.Y. 349, 353, 191 N.E. 12, 13,93 A.L.R. 1380. The ward here was in *Page 584 
need of care and comfort. She intended during her lifetime to use the money in the bank for such purposes and not to give it to Florence and at her death to give her only what remained. There can hardly be any doubt that the ward, if she had remained of sound mind, would have used the bank account for her care and comfort. There was no abuse of discretion in holding that the ward's property be applied for her comfort and welfare and the expenses of her guardianship.
5. The order of May 13, 1939, allowing and settling the guardian's intermediate account for the period from January 1937 to March 1, 1939, determined that the guardian was not liable on the note. That determination is res judicata
regardless of any liability arising from her acceptance of the appointment as guardian.
In most jurisdictions an intermediate account of a guardian is not final because there is no provision for its settlement and allowance. Such accounts generally are merely filed without any judicial action on them and are regarded as intended to furnish information to the court and interested parties of the status and general conduct of the guardianship. Diaper v. Anderson, 37 Barb. (N.Y.) 168; Annotation, 99 A.L.R. 996. Where, however, the applicable statute provides for the hearing, settlement, and allowance of an intermediate account, an order settling and allowing the account possesses the same finality as a final order or judgment. Woodmansie v. Woodmansie, 32 Ohio St. 18. Especially is this true where an appeal lies from the order allowing and settling or refusing to settle and allow such an account. Stubblefield v. Stubblefield,105 Ark. 594, 151 S.W. 994; France v. Shockey, 92 Ark. 41,121 S.W. 1056.
Our statute (Mason St. 1940 Supp. §§ 8992-137 to 8992-139) provides that an intermediate the same as a final account of a guardian shall be heard upon notice, and "if the account be correct, it shall be settled and allowed; if incorrect, it shall be corrected and then settled and allowed." An appeal lies from "an order allowing, or refusing to allow, an account of a representative." (Italics supplied.) Id. § 8992-164(9). It is quite plain that the statutes *Page 585 
intend that there should be final consideration and determination of intermediate the same as final accounts. Because intermediate accounts of trustees are settled and allowed by the district court after due notice and hearing, we adopted the view that an order allowing and settling such an account is in essence a judgment and as such binding upon the parties and subject to the rule of res judicata. In re Trusteeship Under Last Will of Melgaard, 200 Minn. 493,274 N.W. 641. For the same reasons, we hold that an order allowing and settling an intermediate account of a guardian made pursuant to statute is a final adjudication and binding upon the parties. Therefore the order of May 13, 1939, allowing and settling the guardian's intermediate account showing that the guardian was not chargeable on the outlawed note, in effect held and is res judicata that she is not liable.
6. Appellant contends that, quite aside from any legal liability, the guardian should be charged with the amount of the outlawed note under the doctrine of retainer adopted in In re Estate of Lindmeyer, 182 Minn. 607, 235 N.W. 377, where we held that an outlawed debt due from a legatee to the decedent may be deducted from his distributive share of the decedent's estate. Retainer is the right of a representative to retain a part of a distributive share equivalent to the distributee's debt. Courts have experienced no little difficulty in working out a satisfactory theory of the rule. The theory generally adopted is that the decedent's entire estate shall be distributed; that the debt represents assets of the estate subject to distribution; that to accomplish entire and equal distribution of the estate a portion of the distributee's share equal to the debt should be retained; that such a result may be obtained by treating the debt as so much assets in the distributee's hands applicable in part payment of his distributive share; and, that, where the debt is outlawed, the remedy only is barred and the right remains. In the Lindmeyer case (182 Minn. 609, 235 N.W. 378) we said:
"It is said that it would be grossly inequitable to allow such distributee to obtain his full share of an estate while he is withholding *Page 586 
that portion of the same that is already in his hands. Indeed the distributee cannot, in accordance with justice or good conscience, be entitled to be awarded and receive his share as long as he is a debtor to the estate and thereby has in his own hands a portion of the fund upon which the payment of his own share and the share of others depends. To permit the distributee to have such advantage would serve to diminish the fund and result perhaps to the prejudice of others. If he could receive his share and at the same time retain that portion of the fund in his hands out of which his share ought to be paid, it would probably result in his receiving a proportionately larger amount than others equally entitled distributees."
Cf. Lewis v. Lewis, 211 Minn. 587, 2 N.W.2d 134.
Reimbursement of the guardian for the care and support of the ward and the expenses of administration does not involve a distribution of the ward's estate. Where a ward dies, the property remaining in the hands of the guardian after settlement and allowance of his final account should be delivered to the representative of the deceased ward's estate for distribution to the persons entitled thereto. Distribution can be made not in the guardianship, but in the administration proceedings only. Winjum v. Jesten, 191 Minn. 294,253 N.W. 881. There is no fund here to be equalized and distributed, and hence there is no right to retain.
In case of a distribution, the decedent is under no legal obligation to give the shares of his estate to the distributees. Whether the decedent adopts a testate or intestate distribution, the disposition depends entirely on his bounty. The distributees have no right as against the decedent to compel the disposition.
Reimbursement of the guardian does not depend on the bounty of either the ward or the court. The guardian's right to reimbursement rests upon the legal right to be reimbursed out of the ward's estate for what he is out of pocket. Reimbursement involves payment to discharge a debt or claim, not a distribution of the debtor's money or property to the payee. *Page 587 
Our statutes relating to claims against the estates of decedents clearly recognize the distinction. Subsequent to the Lindmeyer case the doctrine of retainer was adopted by statute. Mason St. 1940 Supp. § 8992-115. But no offset barred by the statute of limitation is allowed against a claim. Id. § 8992-103.
The reasons for application of the rule of retainer to a debt due from a distributee of a decedent's estate to the decedent do not obtain in the case of a claim of a guardian against a ward's estate for the care and support of the ward and the expenses of the guardianship. Where the reason for a rule ceases the rule ceases. Champ v. Brown, 197 Minn. 49, 59,266 N.W. 94; First Nat. Bank v. Flynn, 190 Minn. 102,250 N.W. 806, 92 A.L.R. 1272. The guardian should not be charged under the doctrine of retainer with the outlawed note.
As pointed out in the Lindmeyer case, 182 Minn. 607,235 N.W. 377, the right of retainer should not be confused with set-off and recoupment. Decision here is confined to right of retainer in a strict sense.
Affirmed.