LENA HAGEN v. OLIVER B. REKOW, GUARDIAN OF
ESTATE OF MAGNUS MOEN.
JOHN E. ODDAN, ADMINISTRATOR AD LITEM OF
ESTATE OF MAGNUS MOEN, THIRD-PARTY DEFENDANT.

91 N. W. (2d) 768.

August 1, 1958—No. 37,622.

*Kief & Kief,* for appellant.
*W. D. Prindle* and *Robert Cudd,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

Plaintiff, Lena Hagen, brought this action in conversion against Oliver B. Rekow as guardian of the estate of Magnus Moen, incompetent ward, and Oliver B. Rekow individually. John E. Oddan, administrator ad litem of the estate of Magnus Moen, deceased, was substituted as third-party defendant for the executrix of the estate.

Plaintiff contends that she is entitled to the proceeds of two certificates of deposit herein described. The facts were stipulated in submitting the case to the trial court without a jury.

Magnus Moen was adjudged incompetent on October 29, 1955; was

never restored to capacity; and died on August 23, 1956. Defendant Rekow was appointed guardian of the estate of Magnus Moen on October 29, 1955, and was still guardian of said estate at the time of these proceedings. In April 1956 Lena Hagen and Clifford Anderson were appointed guardians of the person of Magnus Moen and so remained until the time of his death.

On January 9, 1948, the First National Bank of Montevideo, Minnesota, issued a certificate of deposit of $800 payable to Magnus Moen, or plaintiff, either or the survivor. The certificate was renewed in the principal sum annually thereafter with the same payees, to and including February 15, 1955.

On June 30, 1948, the same bank issued a certificate of deposit for $2,000 to Magnus Moen, or Mrs. Edna Anderson, which certificate was renewed in the principal sum on June 30, 1949, with the same payees. On June 30, 1950, that certificate was renewed in the principal sum, but the payees were changed to Magnus Moen, or plaintiff, either or survivor. That certificate was renewed in the principal sum to and including June 30, 1955, with the same payees.

On December 2, 1955, the certificate for $800, issued on February 15, 1955, was caused to be cancelled by Rekow, the guardian, and a new certificate dated back to that date was issued for $800, payable to Magnus Moen only. Also on December 2, 1955, Rekow caused the $2,000 certificate issued on June 30, 1955, to be cancelled and a new certificate for $2,000 dated back to that date issued, payable to Magnus Moen only. These cancellations and the issuance of new certificates were without the authority of the probate court.

The renewed $800 certificate with $16 interest has remained in the possession and custody of Rekow, who is ready, willing, and able to surrender the same to whoever the court determines is rightfully entitled to it. The renewed $2,000 certificate was cashed by Rekow as guardian on August 16, 1956, and this amount with interest, totalling $2,040, was deposited by him as guardian in the Union State Bank of Montevideo. Rekow claims that he used a portion of the proceeds of that certificate for the payment of necessary costs and expenses in maintaining the ward during the latter's lifetime and that the balance remains in a checking account. He is ready, willing, and

able, according to the stipulation, to make a full accounting of the balance of the proceeds of that certificate and to pay it to whoever the court determines is entitled to it. The stipulation further states that at the time defendant, as guardian, cashed the $2,000 certificate there were other assets in the estate, including U. S. Government E bonds in excess of $3,000 which were past due.

The trial court found substantially in accordance with the stipulated facts set forth above. It concluded that the two certificates of deposit with accrued interest were the property of the estate of Magnus Moen, an incompetent ward; that Rekow was accountable therefor as guardian of the estate; and that plaintiff has no right, title, or interest to these certificates of deposit or the proceeds.

In connection with plaintiff's contention that she is entitled to the proceeds of the two certificates, the trial court stated in its memorandum that there is no claim that she contributed any part of the money represented by the certificates of deposit or that they were ever delivered to her or were ever in her possession. The court further stated that so far as the evidence disclosed the money represented thereby was the property of Moen and the certificates were in his possession until he was adjudged incompetent and a guardian of his estate was appointed and qualified. It is undisputed that the change in the names of the payees on the certificates was completed, that the renewed certificates which had been dated back to February 15 and June 30, 1955, had matured, and that the $2,000 certificate had been cashed, all prior to the death of Moen on August 23, 1956.

While we recognize that the case before us is not without difficulty we cannot agree with the trial court's conclusions under the record before us. Here we have a situation where the certificates of deposit in question were placed in joint ownership by Moen with the rights of survivorship. They were renewed in the same manner annually by Moen for about 5 years prior to his being adjudged incompetent. After he was declared incompetent and before the certificates matured, his guardian caused the certificates to be dated back and reissued in the name of Moen only. This was done without the approval of the probate court but there is no claim by anyone that the guardian acted surreptitiously.

The question then is whether the guardian had the right under the circumstances here to have the certificate reissued without the approval of the probate court.

M. S. A. 1949, § 525.56, defines the duties of a guardian. The material part here reads:

"A guardian shall be subject to the control and direction of the court at all times and in all things. A general guardian of the person shall have charge of the person of the ward. A general guardian of the estate shall

\* \* \* \* \*

"(3) Possess and manage the estate, collect all debts and claims in favor of the ward, or, with the approval of the court, compromise the same, institute suit on behalf of the ward and represent the ward in any court proceedings, and invest all funds, except such as may be currently needed for the debts and charges aforesaid and the management of the estate, in such securities as are authorized by section 50.14 and approved by the court, except as provided in section 48.84."

It is apparent under our statute that some duties of a guardian may be performed without approval of the court while other duties require such approval. For example, he may collect the debts of the ward without approval but must have such approval to compromise such debts and to invest the funds of the ward. He may sell personal property of the ward without approval but prudent guardian would ordinarily procure approval of the court before selling personal property of any considerable value. Long v. Campion, 250 Minn. 196, 84 N. W. (2d) 686.

The rule has been stated in general to the effect that one appointed guardian of an estate of an incompetent ordinarily is limited to taking charge of and handling such estate. He does not become the alter ego of the incompetent and is not empowered by virtue of his office to act for the incompetent in matters involving the exercise of personal discretion so as to change an act performed by the incompetent while mentally normal. Matter of Rasmussen, 147 Misc. 564, 264 N. Y. S. 231, involving a savings account in depositor's name in trust for another; Matter of Wainman, 121 Misc. 318, 200 N. Y. S. 893, re

change of beneficiary of incompetent's life insurance policy. Nor may he waive or terminate any rights of the incompetent without approval. First Trust Co. v. Hammond, 139 Neb. 546, 298 N. W. 144, involving waiver of rights of a ward by a guardian. 44 C. J. S., Insane Persons, § 49. While we recognize that statutes in other jurisdictions may differ with ours in respect to duties of a guardian, it seems to us a reasonable rule that before a guardian can eliminate the name of a joint tenant or survivor in certificates of deposit which had been renewed for several years in the same manner *while the donor was mentally competent* the guardian should at least obtain the approval of the probate court to do so *after the donor became incompetent* and before the certificate matured.

It is therefore our opinion that the guardian should have obtained the court's approval before doing what he did here. It follows that the status of the $800 certificate of deposit which was not cashed or renewed at maturity remains the same as it did before the guardian caused it to be renewed in Moen's name only. In other words we hold that the certificate and the proceeds thereof together with accumulated interest became the property of the plaintiff as survivor after Moen's death.

We come now to a disposition of the $2,000 certificate of deposit renewed June 30, 1950, and each year thereafter in the principal sum through June 30, 1955. That certificate and the renewals thereof were made payable to Magnus Moen or Lena Moen Hagen, either or survivor. It was cashed by the guardian on August 16, 1956, *after* it had matured but *before Moen died* and the proceeds thereof with interest were deposited by Rekow as guardian of Moen's estate. According to the record the guardian used some of the proceeds from that certificate for the payment of necessary costs and expenses in maintaining the ward while he was living. It is our opinion that, when the $2,000 certificate of deposit became due before Moen's death, the guardian was authorized under § 525.56 to collect the proceeds therefrom and deposit them in his guardianship account without the approval of the court. It is our further opinion that he could use such part of those funds as was needed for the support, care, and maintenance of the ward, subject of course to an approval by the probate court of his acts in connection with his final account.

We hold that any balance left in said guardianship account after Moen's death should be delivered to the administrator or executor of Moen's estate upon the approval of the guardian's final account.

Reversed in part and affirmed in part.