Van Voorhis, J.
In disbarring appellant, the Appellate Division said: ‘ ‘ This disciplinary proceeding arose out of a case which passed through this court (see Gorfinkel v. First Nat. Bank in Yonkers, 19 A D 2d 903, affd. 15 N Y 2d 711).” That action involved a bank deposit previously made by Ellen Snyder, also known as Ellen Elliott, in her own name ‘ ‘ in trust for David Gorfinkel”. Such a deposit “is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime ”. (Matter of Totten, 179 N. Y. 112,126.)
This lady became appellant’s client in 1953; she became incompetent in 1955 and he was appointed as her committee, at the instance of the Superintendent of the State Hospital where she was confined; she died in 1959. The balance in this bank account was $6,011.18 when appellant was appointed as her committee. He transferred this money, without a court order, to an account in his name as committee for the incompetent. The evidence in the record in the Gorfinkel case was confusing and incomplete concerning how he spent these moneys as committee. An endeavor was made to follow the proceeds of what had been the Totten trust account. It was asserted, on the one hand, that he applied the bulk of it for the maintenance *469 and burial of his ward. In disbarring him, the Appellate Division said in a memorandum opinion accompanying the order iioav under review that he used 1 ‘ the sum of $5,302.86 withdrawn from the Totten trust to repair real property of Avhich he was the owner at a time when the incompetent was in an institution and could not use her life estate ”.
After Ellen’s death, Gorfinhel’s executrix, in the aforesaid action which gave rise to this disciplinary proceeding, recovered the amount in the Totten trust account as of the time of her death, with interest, and the bank, in turn, recovered judgment over against appellant. (19 A D 2d 903; 15 N Y 2d 711, supra.) Since the Gorfinhel case instigated and largely controlled appellant’s disbarment, it is necessary to examine somewhat more closely the facts and the law on which it was decided. The memorandum by the Appellate Division in Gorfinhel states that “ The bank was under a duty to ascertain that the committee had the requisite authority to thus terminate the trust (see Noah v. Bowery Sav. Bank, 225 N. Y. 284) ” and that 11 the committee Avas without authority to terminate the trust by withdraAval of the entire fund on deposit Avith the bank (Matter of Rasmussen, 147 Misc. 564; Matter of Cianfrocco, 28 Misc 2d 86; Matter of Kissel, 145 N. Y. S. 2d 107; Matter of McCormack, 50 N. Y. S. 2d 274).” The reasoning of these decisions stems from the principle enunciated by Surrogate Wingate in Matter of Rasmussen where, after pointing out that the committee of the property of an incompetent is a mere custodian acting as the arm of the court and 1 ‘ that rights of election possessed by the incompetent cannot be exercised by a committee ” (147 Misc. 564, 566), the Surrogate said (pp. 567-568) that
“ It would, therefore, be beyond his power, in a case like the present, where the use of the proceeds of the tentative trust account were not required for the needs of the incompetent, to alter the relation of the various interested parties which existed at the time of his appointment, in respect thereto. * * *
“ Had the use of any portion of these funds been necessary for the welfare of the incompetent, an entirely different situation would have been disclosed, and a different result would follow.” (Italics supplied.)
It is suggested near the end of the Rasmussen opinion (p. 568) that, as regards the revocation of a Totten trust, “ the adminis *470 tration of the estate of the deceased incompetent would take place in substantially the same manner as if her death had occurred at the time of the adjudication of incompetency, subject, however, to the deduction of such sums or items of property as had been necessarily employed by the committee for the upkeep and welfare of the incompetent between the date of adjudication of incompetency and the death.”
Unless the proceeds of such a bank account are necessarily or properly .required for the support or welfare of the incompetent, neither the committee nor the court whose arm the committee is can alter the devolution, upon death, of the property of an incompetent by canceling a Totten trust account, by the same token whereby neither the court nor the committee could dispose of the incompetent’s property by making a new and different will or by exercising a personal right of election to obtain a dissolution of marriage by divorce (Mohrmann v. Kob, 291 N. Y. 181). When the proceeds of bank accounts, or other property established before incompetency in this or some similar form, are required for the incompetent’s support or welfare, may become a matter for difference of opinion. For the protection of committees and financial institutions in the situation of First National Bank in Yonkers, the custom has arisen of obtaining a court order (on such notice, if any, as may be appropriate) authorizing the committee to withdraw the deposit for the needs of the incompetent. No such order was obtained here. We affirmed the order of the Appellate Division in Gorfinkel for the reason that this incompetent had other property which should have been exhausted by the committee before resorting to this Totten trust account which this woman had earmarked for Grorfinkel upon her decease. The decision did not depend upon the present appellant’s having spent proceeds of the Totten trust account upon real estate of his own, concerning which the evidence in the GorfinJcel record was unclear. Appellant has now repaid the' bank the amount of the Totten trust account, with interest, which the bank has paid to Grorfinkel.
The circumstance that appellant was surcharged with the amount of the Grorfinkel Totten trust account does not, in itself, determine his character or fitness to practice law. It is one thing for the committee of an incompetent to misappropriate her funds by devoting them to his own private use; it is quite *471 another matter to become liable to a surcharge for resorting to one particular asset of an incompetent rather than to another in order to provide for her support. The absence of a court order to spend the Totten trust proceeds upon the incompetent would not be fatal, if it were necessary to resort to them in order to supply the incompetent’s wants. Without a court order, granted upon appropriate notice to interested parties, appellant and the bank acted at their peril in the withdrawal of these funds. If the event disclosed, as it did, that other assets existed so that the Totten trust account was not needed to provide for this elderly lady, then the bank had to reimburse G-orfinkel and appellant became obliged to indemnify the bank. This brings no blot upon appellant’s scutcheon, however, unless it were true that he withdrew the Totten trust money to repair his own real property. The Appellate Division found, as above stated, in this proceeding that he used $5,302.86 of this fund for this purpose. The record does not sustain this charge. The facts are less simple, and need to be stated more fully in order to evaluate his conduct. What appellant did is not immune to criticism and may well form the basis for disciplinary action, but we consider that this particular charge against him arising out of the GorfinJcel action has not been sustained as matter of law. The record before us demonstrates that he used all of this Totten trust account for his ward’s maintenance and support, her funeral and her estate. The questionable professional conduct in which appellant engaged consists in his drawing several wills for her, soon before she became incompetent, by which she purported to give whatever she had to him. He also caused her to execute a deed to him of the remainder of her three-family apartment house, reserving to her the life use. This is the real estate on which the Appellate Division said that appellant spent $5,302.86 from the Totten trust account. If he did that, it would be a serious charge, particularly inasmuch as she was a feeble old lady about 80 years of age, and he was 20 years younger. In a moment we shall refer to exactly how this record shows that he did spend the money.
It was not right for appellant, while acting as committee, to have filed annual accounts showing this real property to be hers without mentioning his remainder interest. Likewise, before she became incompetent, he should not have urged or permitted *472 the welfare authorities to advance money on a mortgage given by her alone upon this parcel of real property without disclosing that (contrary to his annual committee accounts) he was the owner of the remainder and that the mortgage which she gave upon her life use would become valueless on her death.
This court possesses no power to rule upon the facts, in the absence of an abuse of discretion as matter of law, or to determine the severity of the punishment in these disciplinary, proceedings. It is our judgment, however, that the Gorfinkel charge had not been established as matter of law, and that the other charges should be remanded to the Appellate Division to impose such disciplinary action as may be deemed appropriate to those charges alone without the Gorfinkel charge.
Appellant has submitted an analysis of his account as committee, which is Exhibit B, the material items of which are supported by his bankbook and vouchers, Exhibit Gr. From these it appears that as committee he received the total sum of $10,279.89. This consisted of $6,011.18 transferred from the Totten trust account and aggregate deposits from rents of her three-family apartment house of $4,268.71. His disbursements for general expenses of administration, payment of her life insurance premiums, and a small item of $11.02 for bank charges in servicing the account, amount to $5,283.41. In addition, he accounted for a bank balance in the First National Bank after her death, payable to whoever may be entitled to her estate, of $826.57, making a total amount of proper expenditures for the benefit of his ward or her estate of $6,109.98. This is more than the total proceeds of the Totten trust account.
The charge that money was spent on the real property appears to have arisen from the fact that during the period of Mrs. Snyder’s incompetency appellant collected $4,268.71, which has been mentioned above, from rents from this three-family apartment house to which he had a deed of the remainder interest. Of that sum he spent $4,169.61 in taxes, insurance and repairs upon this real property. The slight excess of rents over expenditures ($99.10) he has duly accounted for. It is true that during this time Mrs. Snyder was in the State Hospital and did not personally live upon these premises, but she was entitled to whatever income was derived from it. The building had apparently become run down and the items of expenditure which are *473 stated in detail in schedule “ B ” of Exhibit R indicate that they are almost entirely for current maintenance and repair rather than permanent improvements to the freehold. In summary, although appellant may have been chargeable with professional misconduct in causing this old lady to make wills in his favor and to deed to him a remainder interest in her real estate, and, although it has been held in the Gorfinkel case that he should have sold the real esate in order to pay for her support rather than by resorting to the Totten trust account which she had destined to Gorfinkel on her death, he should not have been accused of moral turpitude in spending the Totten trust account on Mrs. Snyder or for her estate, nor for spending the rents from the real estate to defray necessary maintenance costs and repairs. He is now in position where he has had to restore the Totten trust bank account from his own funds, because he did not resort first to the real property to which he held a deed of the remainder interest, and that deed has been set aside in an action in the Supreme Court, Westchester County, entitled Olsen v. Del Bello on the ground that it eventuated from constructive fraud on account of breach of a confidential relationship between attorney and client. Appellant made his peace with these rather remote distributees by paying $7,000 to retain this real estate.
For the reasons stated, we consider that the charge against appellant in paragraph ‘ ‘ 9th A ” of the petition that appellant violated Canon 11 of the Canons of Professional Ethics by using the sum of $5,302.86 withdrawn from the Totten trust to repair real property of which he was the owner at a time when the incompetent was in an institution and could not use her life estate is not sustained by the evidence as matter of law.
The order appealed from should be reversed by dismissing the portion of the charges last mentioned and remanding the matter to the Appellate Division to impose whatever discipline may be warranted on the other charges.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Breitel concur.
Order of Appellate Division reversed, without costs, and matter remitted to that court for further proceedings in accordance with the opinion herein.