John R. WEATHERLY, Trustee,
Petitioner,

v.

Jacqueline BYRD, guardian of the person
and Estate of Aileen Mitchell,
Respondent.

No. B-6934.

Supreme Court of Texas.

May 10, 1978.

Rehearing Denied May 31, 1978.

Kelley, Ryan, Merrill & Young, C. O. Ryan, Houston, for petitioner.

Leeper & Priddy, Laurance L. Priddy, Law, Snakard, Brown & Gambill, R. F. Snakard, Fort Worth, for respondent.

McGEE, Justice.

This appeal arises from an action by the guardian of an incompetent settlor to revoke a revocable inter vivos trust. Two issues are presented by this appeal. First, it must be determined if a guardian has the authority to exercise an incompetent settlor-ward's right of revocation without seeking court authorization. Second, if court authorization is necessary, it must be determined whether the probate court or the district court has jurisdiction to enter such an order. This cause was filed in the Probate Court of Tarrant County which subsequently entered an order authorizing the guardian to revoke the trust. The court of civil appeals affirmed. 552 S.W.2d 573. We reverse the judgments of the courts below and the cause is dismissed.

On September 24, 1971, Aileen Mitchell executed a revocable inter vivos trust agreement naming herself as beneficiary. The purpose of the trust was to provide for the settlor during her lifetime and to dispose of the trust estate after her death. John Weatherly, her lawyer for some years, prepared the trust agreement and was also named as the trustee. The trust stated that Miss Mitchell had the right to alter, amend, revoke, or terminate the trust upon giving ten days' written notice to the trustee. Miss Mitchell directed that the residue be divided between the named beneficiaries in the event the trust was not revoked prior to her death.

In late 1972, Miss Mitchell became unable to care for herself and was placed in a convalescent home by Weatherly. Jacqueline Byrd, a great niece, discovered that Miss Mitchell was in the convalescent home

and brought her back to Fort Worth. In March, 1973, Miss Mitchell was declared an incompetent and Mrs. Byrd was appointed guardian. Miss Mitchell resided with Mrs. Byrd until May of 1975, when she was placed in a convalescent home in Fort Worth where she remained until her death in April, 1977.

In October, 1973, Mrs. Byrd filed a petition in the Probate Court of Tarrant County seeking an order authorizing her to revoke the trust. She also sought to have the trustee render an accounting of the trust property and to deliver the property to her. Weatherly filed a plea of privilege and a plea to the jurisdiction. In the former pleading he sought to have the cause transferred to Harris County, where he resided. The probate court overruled the plea of privilege. On appeal, the court of civil appeals held that venue for the portion of the action concerning revocation of the trust was proper in the Probate Court of Tarrant County. On its own motion, however, it held that the probate court did not have jurisdiction over that portion of the action concerning the accounting and ordered that portion of the suit be dismissed. *Weatherly v. Byrd*, 519 S.W.2d 504 (Tex.Civ.App.— Fort Worth 1975, no writ).

On remand, a hearing was held in probate court to consider revocation of the inter vivos trust. The court overruled Weatherly's plea to the jurisdiction that asserted that the Texas Trust Act[1] placed jurisdiction of such a proceeding in the district court. The court then entered an order authorizing and directing Mrs. Byrd to terminate the trust.

The court of civil appeals affirmed the judgment of the probate court. In doing so, it first held that the guardian had the authority to revoke the trust without the authorization of the probate court. The court reasoned that the right to revoke the revocable trust "vested" in the guardian upon her appointment and qualification to act as such. The court also held that, in any event, the probate court had exclusive jurisdiction to enter the order from which the trustee had appealed.

■ We disagree with the court of civil appeals' first holding. It is the prevailing view that a guardian may not exercise the purely personal elective rights of his ward. *See Howard v. Imes*, 265 Ala. 298, 90 So.2d 818 (1956); *Chase Nat'l Bank v. Ginnel*, 50 N.Y.S.2d 345 (Sup.Ct.1944); *Hendricks v. Grant County Bank*, 379 P.2d 693 (Okl. 1963); *Delevan v. Thom*, 244 S.W.2d 551 (Tex.Civ.App.—Beaumont 1951, no writ); 39 Am.Jur.2d *Guardian and Ward* § 102 (1968). Although *Delevan v. Thom, supra,* dealt with a widow's right of election under a will, its reasoning is persuasive in this instance. The court there stated:

"We have examined the guardianship statutes, and it is our conclusion that the right of election . . . did not constitute such a property right as formed a part of the estate committed to the care of the guardian of her estate, or such a right as belonged to the guardian of her person. We hold, as a consequence, that the guardian could not exercise the right of election." *Delevan v. Thom*, 244 S.W.2d at 555–56.

The right to revoke a trust is a personal right involving the exercise of personal discretion and in that respect it is similar to the right of election under a will. *See* G. Bogert, The Law of Trusts and Trustees § 1000 (2d ed. 1962). Accordingly, we hold that the right to revoke a revocable trust, absent an agreement to the contrary, is a purely personal right of the settlor and does not vest in the guardian.

This is not to say that a revocable inter vivos trust becomes irrevocable after the settlor has been declared incompetent. Rather, it means that the guardian must apply to a court of competent jurisdiction for authorization to revoke the trust. The court of civil appeals held that the probate court was the proper court in which to seek such an authorization. We disagree.

1. Tex.Rev.Civ.Stat.Ann.  art.  7425b–24  A. (1960).

Mrs. Byrd argues that article 7425c, § 8[2] provides a strong inference of the probate court's jurisdiction to enter an order authorizing the guardian to revoke the trust. She urges that if the right of revocation held by the ward is a power that the probate court may authorize the guardian to release, then it may be inferred from section 8 that the probate court may also authorize the guardian to exercise the ward's right of revocation. We do not agree with this interpretation of the provisions of section 8. Even if the definition of a power could be construed to include the power to revoke an inter vivos trust, the provisions of section 8 expressly provide only for the release of such a power, not for the exercise thereof. Furthermore, the primary purpose of article 7425c is tax related in that it is to prevent assets subject to a power of appointment from being included in the decedent's estate for federal estate tax purposes, a situation not applicable in this case.

■ We conclude that the provisions of the Texas Trust Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–24 A. (1960), provide that the district court shall have jurisdiction over this action. That statute reads:

. "A. The district court shall have original jurisdiction to construe the provisions of any trust instrument; *to determine the law applicable thereto*; the powers, responsibilities, duties, and liability of trustee; *the existence or nonexistence of facts affecting the administration of the trust estate*; to require accounting by trustee; and to surcharge the trustee." [Emphasis added].

The comprehensive provisions of this statute indicate that the Legislature intended for the district court to have jurisdiction over actions pertaining to express trusts, particularly where legal and factual determinations relative to the construction of the trust are involved.[3] (See emphasized language). Sound policy reasons support our conclusion. First, judicial efficiency is maximized by having various actions pertaining to a trust resolved by the same court. Second, the district court would have jurisdiction over all of the parties involved in the action under article 7425b–24

---

**2.** Tex.Rev.Civ.Stat.Ann. art. 7425c, § 8 (1960) provides: .

"A power held by a person under a disability and for whose estate a guardian has been or may be appointed, may be released, in the manner hereinabove provided, by the guardian of such person's estate, upon order of the County Court of the county in the State of Texas in which such guardian shall have been appointed or in which the guardianship proceeding shall be pending."

Article 7425c, § 1(a) defines "power" to mean:

"[A]ny power to appoint or designate to whom property shall go, any power to invade or consume property, any power to alter, amend or revoke any instrument under which an estate or trust is held or created or to terminate any right or interest thereunder . . . ."

Article 7425c, § 1(e) defines "release" to mean a:

"renunciation, relinquishment, surrender, refusal to accept, extinguishment, and any other form of release."

**3.** For example, a legal determination is necessary to ascertain what legal standard is to be used as a guide in revoking a trust such as the one presently before us. The probate court used the "best interests of the ward" test. The court of civil appeals agreed with this test without citation of any authority. 552 S.W.2d at 575. In other jurisdictions, the test is that of the "maintenance and support of the ward." *See In re Cuen's Estate*, 142 Cal.App.2d 258, 298 P.2d 545 (1956); *First Nat'l Bank v. First Federal Savings & Loan Ass'n*, 196 So.2d 211 (Fla.App.1967); *Rickel v. Peck*, 211 Minn. 576, 2 N.W.2d 140 (1942); *In re McCormack's Estate*, 50 N.Y.S.2d 274 (Sup.Ct.1944); Annot. 138 A.L.R. 1375 (1942). Admittedly, the cited cases dealt with Totten trusts. The standard was carried over, however, to a case involving a revocable trust in *Chase Nat'l Bank v. Ginnel*, 50 N.Y.S.2d 345 (Sup.Ct.1944). Furthermore, once a legal standard has been determined, the court must make a factual determination of whether the circumstances of the particular case warrant revocation under that standard. We believe that these are examples of legal and factual determinations that the Legislature intended to be made by the district court and so provided for by the enactment of article 7425b–24 A. Because of our holding that the probate court lacked jurisdiction to consider the action, it is not necessary for us to pass on the question of what is the proper legal standard to be used by a court in authorizing the revocation of a trust similar to the one before us.

C. Finally, the district court is a court of general jurisdiction and has broad powers with which to fashion appropriate relief without having to resort to a costly and burdensome court-supervised guardianship. Therefore, we hold that the district court has exclusive original jurisdiction over a proceeding brought by a guardian to revoke a revocable inter vivos trust of an incompetent settlor.

It follows that the probate court was without authority to enter the order authorizing and directing that the trust be revoked. Accordingly, we reverse the judgments of the courts below and render judgment dismissing the cause.