**In the Matter of the ESTATE OF Adele C. KROYER.**

**In the Matter of the GUARDIANSHIP OF Adele C. KROYER.**

**No. C3-85-1971.**

Court of Appeals of Minnesota.

April 8, 1986.

James J. Agan, Burnsville, John D. Hagen, Jr., Minneapolis, for Diane Lake.

Elizabeth B. McLaughlin, Shakopee, for Adele C. Kroyer and Gerald Rekow.

Stephen W. Walburg, Shakopee, for Bobbie Jo Pasek.

Russell L. Streefland, Burnsville, for Donna M. Arnold.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Diane L. Lake appeals from an order of the County Court, Scott County, approving a special guardian's account. We reverse the order of the trial court and remand to the trial court for imposition of a constructive trust in favor of the original Totten trust beneficiaries.

## FACTS

The decedent, Adele C. Kroyer, executed a will in 1980 which directed that her estate be divided into three equal shares: one share for her son, Wilfred Kroyer; one for her daughter, respondent Donna Arnold; and the third share to be divided equally among the surviving children of her deceased daughter, Alice Pasek. The surviving children of Alice Pasek include her adopted children, Garry Pasek and respondent Bobbie Jo Pasek.

In 1983, Mrs. Kroyer established two revocable Totten trust accounts.[1] She named herself as trustee and her twelve natural grandchildren as beneficiaries. Bobbie Jo Pasek and Garry Pasek were not named as trust beneficiaries.

On February 14, 1985, Mrs. Kroyer suffered a cerebral hemorrhage and was hospitalized in a comatose condition. Approximately one month later, she was discharged from the hospital and transferred to a nursing home. Although she had not regained consciousness since she entered the hospital, her doctor stated that her condition was stable and that she could live up to one year.

At about the time that her mother was being transferred to the nursing home, Donna Arnold petitioned to establish a special guardianship. On March 15, 1985, she was appointed special guardian of her mother's person and estate.

Donna Arnold withdrew all of the money from the Totten trust accounts and placed it in special guardianship accounts. The total amount was over $40,000. She testified that she did this in anticipation of substantial medical and nursing home expenses that were not covered by insurance. She did not seek court approval to make the withdrawals. She was able to withdraw the money by showing the letters of special guardianship to the bank.

Adele Kroyer died without regaining consciousness on March 24, 1985, ten days after the guardianship was established. Her final illness produced very few expenses chargeable to the guardian. The guardian's final account lists expenses totaling $264.33. Mrs. Kroyer's assets were sufficient to pay these expenses, as well as attorney's fees and the guardian's fees, without invading the trust accounts.

Appellant Diane L. Lake, daughter of Wilfred Kroyer and acting under power of attorney from him, objected to the final account, contending that Donna Arnold had no authority to revoke the trust accounts without a court order. After a hearing, the trial court approved the final account, subject to adjustments in attorney's and guardian's fees which are not at issue here, and ordered the fees in the guardianship account remitted to the personal representative of the estate. The trial court found that "the transfers were made in good faith and with the reasonable expectation that the funds would be necessary to pay

---

1. A Totten trust is created by the deposit of money by a person in his or her own name as trustee for another. It is revocable during the settlor's lifetime. *See In re Totten,* 179 N.Y. 112, 71 N.E. 748 (1904).

the expenses of Adele C. Kroyer's hospitalization and continued residence in the nursing home." The court stated that "[i]f, at the time that the transfer was made, the guardian had asked specific court permission to withdraw the funds and set up a guardianship account that permission would have been granted." Diane Lake appeals from this order.

The question presented for review is whether the guardian, Donna Arnold, had authority to revoke, without court approval, the Totten trusts established by her ward. If she did not, the money should remain in trust and pass to the trust beneficiaries, the settlor's twelve natural grandchildren. If she did have authority to revoke the trusts, then the funds will be remitted to Mrs. Kroyer's estate and distributed by the terms of her will.

## ISSUE

Does a guardian have the authority to withdraw funds from a Totten trust established by the ward without seeking permission of the probate court?

## ANALYSIS

(a) The duties and powers of a guardian are set forth in Minn.Stat. § 525.56 (1984), which provides in relevant part:

Subd. 1. A guardian or conservator shall be subject to the control and direction of the court at all times and in all things.

Subd. 2. The court shall grant to a guardian or conservator only those powers necessary to provide for the demonstrated needs of the ward or conservatee.

&ast; &ast; &ast; &ast; &ast; &ast;

Subd. 4. &ast; &ast; &ast; The duties and powers of a guardian &ast; &ast; &ast; include, but are not limited to:

&ast; &ast; &ast; &ast; &ast; &ast;

(3) The duty to possess and manage the estate, collect all debts and claims in favor of the ward or conservatee, or, *with the approval of the court,* compromise them, institute suit on behalf of the ward or conservatee and represent the ward or conservatee in any court proceedings, and invest all funds not currently needed for the debts and charges named in clauses (1) and (2) and the management of the estate, in accordance with the provisions of sections 48.84 and 501.125, subdivision 1, or as otherwise ordered by the court.

▮ The statute thus allows the guardian to take some actions, such as collecting debts owing to the ward, without court approval, but requires court approval for other actions, such as compromising debts. The statute does not expressly authorize the guardian to revoke trusts created by the ward, nor does it expressly require court approval to do so.[2]

▮ When interpreting a statute, the courts presume it is consistent with the common law. *Shetsky v. Hennepin County,* 239 Minn. 463, 469, 60 N.W.2d 40, 45 (1953).

A statute is not to be construed in derogation of well-established principles of common-law &ast; &ast; &ast; unless so required by express words or by necessary implication and then only to the extent clearly indicated.

*Swogger v. Taylor,* 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955). Section 524.56, subd. 4(3) does not require "by express words or by necessary implication" that guardians have the power to revoke a Totten trust without the permission of the probate court. It is therefore necessary to look to the common law rule.

▮ (b) The issue presented here has not been ruled on directly by this court or the Minnesota Supreme Court. The prevailing

---

**2.** Respondents attempt to argue that, because a bank account is a debt owing to the depositor, the guardian's revocation of the trust accounts constituted collecting a debt within the meaning of subdivision 4(3). This reasoning is specious. A trust account is clearly not merely a debt owing to the settlor, and the revocation of a Totten trust created by the ward is clearly not within the authority granted the guardian by the statute to "collect all debts and claims," Minn. Stat. § 525.56, subd. 4(3).

rule in other jurisdictions is that a guardian has no power to revoke a Totten trust without applying for a court order. *See, e.g., Simmons v. First Federal Savings & Loan Association,* 132 F.Supp. 370, 372 (D.D.C.1955); *Katz v. Greeninger,* 96 Cal. App.2d 245, 215 P.2d 121 (1950); *Willman v. Phelps,* 631 S.W.2d 63 (Mo.App.1982); *Del Bello v. Westchester County Bar Association,* 19 N.Y.2d 466, 227 N.E.2d 579, 280 N.Y.S.2d 651 (1967); *Weatherly v. Byrd,* 566 S.W.2d 292 (Tex.1978). In *Willman,* the court stated:

> [O]ther jurisdictions hold generally that the guardian, whose function is to conserve the ward's property and support the ward, lacks authority to alter an act taken by the ward prior to incompetency, such as revoking a trust established by the ward. Where funds existing in a revocable trust created by the ward are needed for the ward's maintenance, however, the guardian may apply to the court for permission to withdraw sufficient funds to support the incompetent suitably. In such cases, the guardian's power to withdraw is limited to sums needed for the ward's welfare, and the beneficiary of the trust is entitled to the amount remaining in the account at the death of the depositor.

631 S.W.2d at 65–66.

In *Weatherly,* the Texas Supreme Court stated:

> It is the prevailing view that a guardian may not exercise the purely personal elective rights of his ward.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The right to revoke a trust is a personal right involving the exercise of personal discretion and in that respect it is similar to the right of election under a will. Accordingly, we hold that the right to revoke ·a revocable trust, absent an agreement to the contrary, is a purely personal right of the settlor and does not vest in the guardian.
>
> This is not to say that a revocable inter vivos trust becomes irrevocable after the settlor has been declared incompetent. Rather, it means that the guardian must

apply to a court of competent jurisdiction for authorization to revoke the trust. 566 S.W.2d at 293 (citations omitted).

The secondary authorities are in accord with the majority view. *See Restatement (Second) of Trusts* § 58, comment c; G. Bogert, *the Law of Trusts and Trustees* § 1000, at 323–24 & nn. 40–41 (1983); A. Scott, *The Law of Trusts* § 58.4 (1967).

The rule that a guardian cannot revoke a Totten trust is based on the rationale that the guardian cannot exercise the personal elective rights of his ward. *See Katz,* 96 Cal.App.2d at 248, 215 P.2d at 124; *Weatherly,* 566 S.W.2d at 293; *Willman,* 631 S.W.2d at 65; *Bogert,* § 1000 n. 36. The Minnesota Supreme Court has recognized this general rule. In *Hagen v. Rekow,* 253 Minn. 341, 91 N.W.2d 768 (1958), the ward had purchased certificates of deposit and placed them in joint ownership, payable to him or to another. After he was adjudged incompetent, his guardian caused the certificates to be dated back and reissued in the ward's name only. The supreme court held that the guardian was without authority to do so, and cited a New York case involving a guardian's revocation of a Totten trust:

> It is apparent under our statute that some duties of a guardian may be performed without approval of the court while other duties require such approval. For example, he may collect the debts of the ward without approval but must have such approval to compromise such debts and to invest the funds of the ward. He may sell personal property of the ward without approval but prudent guardian would ordinarily procure approval of the court before selling personal property of any considerable value. *Long v. Campion,* 250 Minn. 196, 84 N.W.2d 686.
>
> The rule has been stated in general to the effect that one appointed guardian of an estate of an incompetent ordinarily is limited to taking charge of and handling such estate. *He does not become the alter ego of the incompetent and is not empowered by virtue of his office to act for the incompetent in matters involv-*

ing the exercise of personal discretion so as to change an act performed by the incompetent while mentally normal. *Matter of Rasmussen,* 147 Misc. 564, 264 N.Y.S. 231, *involving a savings account in depositor's name in trust for another; Matter of Wainman,* 121 Misc. 318, 200 N.Y.S. 893, re change of beneficiary of incompetent's life insurance policy.

253 Minn. at 345–46, 91 N.W.2d at 771.

The rule that a Totten trust may not be revoked by a guardian without approval of the probate court was implicitly recognized in *Rickel v. Peck,* 211 Minn. 576, 2 N.W.2d 140 (1942). In *Rickel,* a mother created a Totten trust with one of her daughters as beneficiary. The mother subsequently became insane. One of her other daughters was appointed guardian of her person and estate. When it appeared that the mother's other funds were insufficient to cover the expenses of her care, the guardian petitioned the probate court for leave to revoke the trust and apply as much of it as might be necessary for expenses of the guardianship. The probate court granted the petition, and the supreme court affirmed, stating:

> *The court* having jurisdiction of guardianships of incompetent persons has the power to order on behalf of an incompetent ward the revocation of a tentative trust of a savings account. Where the depositor becomes insane and it is necessary for his proper care and support, *the court* may order a tentative trust revoked.
>
>    \*    \*    \*    \*    \*    \*
>
> The revocation of a tentative trust *pursuant to order of the probate court* has the same effect as if it had been done by the ward herself free from the disability of incompetency.

211 Minn. at 581–82, 2 N.W.2d at 143–44 (emphasis added) (citations omitted).

The *Rickel* court spoke only of *the court's,* not the guardian's, power to revoke a Totten trust on behalf of an incompetent ward. *Rickel* stands for the proposition that the court may revoke a Totten trust if the court finds that it is necessary for the care and support of the ward. It does not suggest that the guardian may revoke the trust on her own initiative, without seeking the approval of the court or making a showing of necessity to the court.

The proper remedy in this case is a constructive trust in favor of the original trust beneficiaries. When a person in a fiduciary relationship to another acquires property by taking advantage of the relationship, even if she acts in good faith, a constructive trust arises in favor of the person equitably entitled to the property. *Wright v. Wright,* 311 N.W.2d 484, 485 (Minn.1981); *Arnold v. Smith,* 121 Minn. 116, 129, 140 N.W. 748, 753 (1913). If the estate is allowed to retain these funds, it will be unjustly enriched at the expense of the original trust beneficiaries. A constructive trust is the appropriate remedy under these circumstances. *See Wright,* 311 N.W.2d at 485.

### DECISION

We reverse the order of the trial court and remand with instructions to impose a constructive trust in favor of the original Totten trust beneficiaries.

Reversed and remanded.