### CERF v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 8495.

Circuit Court of Appeals, Third Circuit.
Argued Feb. 10, 1944.
Decided March 10, 1944.

---

GOODRICH, Circuit Judge.

The taxpayer in this litigation is Camelia I. H. Cerf. She petitions this Court for review of a decision of the Tax Court sustaining the Commissioner's determination of a gift tax deficiency against her for 1932. The significant events leading up to the present controversy begin some years prior thereto.

In 1928 Louis A. Cerf created four trusts. Each trust was for the benefit of his wife, Camelia I. H. Cerf, and one of their four children. The trustees were Mr. and Mrs. Cerf and a New Jersey trust company. The corpus of each trust was to consist of one eighth of certain renewal commissions as they became payable to Mr. Cerf under an agency contract with an insurance company.[1] The relevant portions of the trust agreements provided that the trustees were to pay the net income to Camelia Cerf during her life "if she shall accept it, (the right to accept such income or any part thereof to continue in Camelia I. H. Cerf during the term of her natural life, notwithstanding one or more refusals thereof) * * *." Income which had not been accepted by Mrs. Cerf at the time of her death was to be added to the corpus of each trust. If her husband survived her, the net income was to be paid, so long as he lived, to anyone Mrs. Cerf directed by her will. Upon failure of appointment by Mrs. Cerf the income was to be added to the corpus of each trust. After the deaths of Louis and Camelia Cerf, the income was to go to the particular child beneficiary of each trust for life with provisions for distribution of corpus thereafter. There was reserved to Louis Cerf the right to amend or revoke the trusts only with the written consent of Camelia Cerf and in conjunction with her as beneficiary.

The alleged taxable events occurred in 1932. In June of that year Louis Cerf executed amendments to all four of the trusts with the written consent of his wife. The amendments provided that upon written demand of Louis Cerf during his lifetime the trustees would pay to him or his nominees or assigns (1) "the sum of $7,800.00 out of the monies now in the hands of said Trustees, derived from the sale of government securities"; (2) "the sum of $1,700.00 from monies now due and payable

Ewing Everett, of New York City, (Malcolm Johnson, of New York City, and Miller & Chevalier, of Washington, D. C., on the brief), for petitioner.

I. Henry Kutz, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH, and McLAUGHLIN, Circuit Judges.

[1] Mr. Cerf had been a general agent for a life insurance company and was entitled to commissions for a given period upon the renewal premiums paid on contracts written by his agency.

under the terms of said trust to said Camelia I. H. Cerf"; (3) "all commissions mentioned in paragraph 1 of said Deed of Trust dated October 1, 1928 hereafter paid to said Trustees"; and (4) "all net income of whatever nature or from whatever source hereafter derived." A second set of amendments to the four trusts were executed by Louis Cerf with the written consent of his wife in August. These gave Louis Cerf the right to amend or revoke any or all of the trusts at his pleasure and without Camelia Cerf's consent.

In August, 1935, Louis Cerf made all the trusts irrevocable and gave up all his rights in the trust corpora and income. In the interim, however, he demanded from time to time and received all of the income of the trusts.

The above statement comprises the revelant facts. The taxpayer filed a gift tax return for 1932, appropriately reserving her right to contest both the existence and amount of liability. The Commissioner determined in his deficiency notice that Camelia Cerf had made two separate gifts to her husband in 1932, one in June, consisting of the income of the trusts for his life and one in August consisting of the income of the trusts for the period represented by the excess of Camelia Cerf's life expectancy over that of Louis Cerf. This was contested by the taxpayer who lost before the Tax Court and she now petitions this Court for review.

The statute involved is the Revenue Act of 1932, § 501.[2] Subsection (a) imposes a tax upon a "transfer * * * of property by gift." Subsection (b) admonishes that the tax applies "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible, * * *."

■ The first argument made by the taxpayer is that she did not make a gift because, by the terms of the trusts, she had no property interest, only an option to accept income. By the 1932 amendments to the trust documents, it is said, she merely exercised an option not to accept income, and that is not making a gift, merely choosing not to accept one. Cf. Brown v. Routzahn, 6 Cir., 1933, 63 F.2d 914, certiorari denied, 1933, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557. The argument is ingenious, as is the language used in the original trust instrument, but to us unconvincing. We

think, as did the Tax Court, that the trust deeds vested in the taxpayer the right to receive the income. This right, by the terms of the instruments, could not be affected by an attempted diversion by the settlor unless she joined therein. Thus the gift was complete from the donor. Reinecke v. Northern Trust Company, 1929, 278 U.S. 339, 346, 347, 49 S.Ct. 123, 73 L. Ed. 410, 66 A.L.R. 397; Smith v. Shaughnessy, 1943, 318 U.S. 176, 181, 63 S.Ct. 545, 87 L.Ed. 690. The gift was obviously one for the taxpayer's benefit. No doubt she could have refused it. But she did not, indeed her acquiescence is shown by becoming a trustee under the trust deeds and signing the documents in that capacity. We think it clear that Mrs. Cerf had a vested interest in the subject matter of the 1928 trusts.

■ Did she part with that interest by way of gift when she joined in the amendments of 1932? First, as to the June amendments, described above.

These amendments to the trusts gave Louis Cerf the right to demand the income therefrom during his lifetime. The taxpayer's argument is that until demand was made, there was no gift, and then, if there was a gift at all it was only to the extent of the demand made. This argument is similar to the one advanced previously to show that Camelia Cerf received nothing under the trusts until she made an acceptance. For similar reasons, it is untenable.

Prior to the June amendments the taxpayer had the right to receive the trust income. This right could not be impaired by Louis Cerf without Camelia Cerf's consent. Camelia Cerf therefore had full control over the disposition of her interests in the trusts. The effect of the June amendments was that Camelia Cerf permitted her husband to assume full control over her right to receive the income from the trusts. Thereafter it was he who would determine who was to get the income. He could by failing to make demand allow Camelia Cerf to receive the income or he could demand it for himself and do with it as he pleased. A new driver was behind the wheel and he could determine the route the income was to take, whether it was to continue as before or turn off in a new direction. By completely abandoning her control over her income rights in the trusts during Louis Cerf's lifetime, Camelia Cerf effected a transfer thereof, Reinecke v.

Northern Trust Company, supra, Smith v. Shaughnessy, supra, taxable under § 501.

The taxpayer has drawn an analogy to the case where one person opens a bank account in the names of himself and another. In this situation there is no taxable event until the other draws on the fund.[3] However, this analogy is obviously inappropriate. The depositor and his intended donee have equal control over the fund, and either can, of his own right draw upon it. Here whatever income Camelia Cerf would receive after the June amendments, she would receive not by virtue of any right vested in her, but as a matter of grace from Louis Cerf's disposition.

The August, 1932, amendments are described above. The taxpayer presses strongly our own decision in Commissioner of Internal Revenue v. Solomon, 1941, 124 F.2d 86, for non-taxability, contending that the exercise of the power by taxpayer in that case was on all fours with that by Mrs. Cerf. Argument for the Commissioner answers that the Solomon decision was wrong, that it has been overruled and that, in any event, it is inapplicable here. In so far as the Solomon decision rests upon an attempted correlation between gift and estate taxes, its base is weakened by subsequent decisions the effect of which is to minimize the importance of this consideration. Robinette v. Helvering, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700; Smith v. Shaughnessy, supra. Property law concepts as to source of powers of appointment have likewise lost significance under Rogers' Estate v. Helvering, 1943, 64 S.Ct. 172. But at that, we were dealing in Solomon with something less than a general power of appointment and we are not here, even if we assume that the August amendments, so far as the taxpayer is concerned, deal with a power of appointment only.

The effect of the August amendments was to put Louis Cerf in a position where he could take back what he had once given Camelia Cerf. He had regained the control he had once relinquished and was for the purposes of the gift tax the owner, in fact if not in name. Thereafter he had it within his sole power to determine whether Camelia Cerf should or should not receive any income for the period by which her life expectancy exceeded his. This increment of power was effected by Camelia Cerf's deed in relinquishing the control which she previously had to veto any amendments to the trusts. Her abandonment of this control constituted a transfer of her remaining rights in the income of the trusts.

The effect of the two amendments was to subject the taxpayer to a gift tax for the release of her equitable interests, as the Commissioner has asserted and the Tax Court affirmed.

 Finally, the taxpayer urges that the Commissioner improperly included in the value of the trusts, the amount represented by half of the renewal commissions[4] to become due after the effective dates of the amendments. It is pointed out that the payments of these commissions were contingent upon the renewal of each policy by each insured and the payment of premiums thereon and that there could be no assignment of the future commissions to the trusts in 1928. Furthermore, the taxpayer states that the Commissioner has himself held the renewal commissions taxable as income to Louis Cerf, in each year as received. Therefore, it is argued, these commissions belonged to him until collected, and only then became part of the trust corpora.

Whether the commissions were properly includable in Louis Cerf's income as they were paid is not in issue in this case. Assuming that they were, that does not detract in the slightest from the proposition that the right to receive the commissions as they became payable was a thing of value, and capable of assignment. Whether the commissions were assignable is independent of the question of whether the taxpayer could avoid an income tax thereon by an "anticipatory arrangement."[5] 2 Williston, Contracts (Rev.Ed. 1936) § 414. We think, that the renewal commissions, previously earned under an existing contract between Louis Cerf and the insurance company, were assignable and effectively assigned by him. See 1 Restatement, Contracts (1932) § 154; 2 Williston, Contracts § 413; Restatement, Contracts; N.J.Annot. (1936) § 154. The right to get these commissions was a valuable right,[6] and it was

---

[3] 2 Paul, Federal Estate and Gift Taxation (1942) § 16.10.

[4] It will be remembered that Louis Cerf assigned only one half of the commissions to become due to the trustees.

[5] Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731.

[6] The renewal commissions payments from 1932 to 1935 exceeded $300,000.

granted to the trustees by the deeds creating the trusts. The right to receive the commissions made the trusts worth more. It was, therefore, a factor to be considered in evaluating the life interest of Camelia Cerf in the income, for as the corpora increased in value, the income rights would of course be correspondingly enhanced. The Commissioner did consider it and the taxpayer has neither shown error in his computation nor offered any more accurate method of valuation of the life interest of Camelia Cerf. The Tax Court sustained the Commissioner, and since we find that the inclusion of this item was in accordance with law, the decision of the Tax Court is final. See Dixie Pine Products Company v. Commissioner of Internal Revenue, 1944, 64 S.Ct. 364.

Affirmed.