Samuel J. Silverman, S.
In each of these two proceedings the committee of an incompetent income beneficiary of a trust requests a direction to the trustee to pay over to the committee part or all of the income of which the incompetent is the beneficiary.
In both cases the granting of the petition would mean that the committee, rather than the trustee, would administer (and to some extent apply) and act, as custodian of the income. It would also mean that there would be double commissions on the income paid over — the trustee’s commission and the committee’s commission.
Estate of Laura R. Lazarus
This is a voluntary accounting proceeding by the executors of the deceased testamentary trustee.
By objection to the account, the committee requests that the trustee he directed to pay over accrued, presumably undistributed, income and all income that will accrue in the future during the lifetime of the incompetent to the committee, and that in the *595 event of the incompetent’s recovery, and adjudication of competency, all of the income be turned over to her.
The governing instrument, testatrix’ will, created a trust for the benefit of her niece, the incompetent, ‘ ‘ to apply the net income therefrom for the care, comfort, maintenance and support of my niece, babette levy, for and during the term of her natural life, or, if my Trustee shall determine it to be for the best interest of my said niece, to pay over the net income from said trust fund to her at such intervals as my said Trustee shall determine not less, however, than quarter-annually. ’ ’ There is also provision for discretionary annual invasion of principal up to $5,000 and a larger invasion on court approval. Upon the death of the niece, the will directs the trustee “ to pay whatever shall remain of said trust fund and any income therefrom ” to the niece’s issue and in default of issue to various other persons, including a balance over certain pecuniary legacies, to a nephew who is now the successor trustee.
It is conceded that no one other than the incompetent has any beneficial interest in income accrued during her lifetime. Thus the trustee’s memorandum states: “ the successor trustee has consistently taken the position that the undistributed income of the trust which might remain in his hands upon the death of Babette Levy would belong to her estate (though at a later point, the trustee asks a construction as to this).
The incompetent is a patient at Pilgrim State Hospital. She has been incompetent for some time; the present committee was appointed for her in 1962. The deceased trustee apparently found it unnecessary to expend all the income for the benefit of the beneficiary and there is accumulated income in the hands of her executors of $14,515.
It would appear that in principle the rights of the committee are the same as the income beneficiary’s rights and would have been if she had been competent (except, of course, that the fact of incompetency is something which the trustee may legitimately consider in determining how to exercise any discretion he may have, to the extent that he has discretion).
The determinative question thus becomes: If there had been no committee, could the life beneficiary have required the payment to herself of all the income, as the committee asks, or of any surplus income over that applied by the trustees to the beneficiary’s care, comfort, maintenance and support. I think the answer is “ no ”.
The testatrix intended the trustee, in the trustee’s own discretion, to decide whether to pay the income or to apply it directly for the care, comfort, maintenance and support of the *596 beneficiary. And the testatrix, I think, intended to vest in the trustee discretion to determine how much of the income was necessary to be used for the care, comfort, etc. of the beneficiary. Such a discretion is implicit in any provision to apply income for such a purpose. (See Matter of McCormick, 40 App. Div. 73 [2d Dept., 1899] affd. 163 N. Y. 551 [1900]0 The trustee is surely not required to spend more for the beneficiary’s maintenance, support, etc. than is reasonably appropriate and proper. And it would also seem to be quite unusual for the creator of a trust to give the trustee discretion to apply income for the care, comfort, maintenance and support of the beneficiary, and to direct nevertheless, that any amount not so needed be paid compulsorily as earned to the beneficiary.
As to any surplus income, the trustee becomes a custodian of the income for the income beneficiary or her estate. (Blood-good v. Lewis, 209 N. Y. 95,102,104 [1913]; Crawford v. Dexter, 178 App. Div. 764, 779 [1st Dept., 1917].)
Two case's present the problem most closely. In Gasquet v. Pollock (1 App. Div. 512 [1stDept., 1896], affd. on opinion below 158 N. Y. 734 [1899]) the will directed the trustees to collect the income “ and to apply the same to the use of my daughter Marie Marshall during her natural life.” The daughter was incompetent. The court held that accumulated income in the hands of the trustees beyond the immediate necessities of the daughter, should be paid over to the daughter’s committee.
In New York Trust Co. v. Black (178 App. Div. 4 [1st Dept., 1917], affd. 223 N. Y. 703 [1918]) the trust instrument directed that the income “ be applied to the use of ” an infant beneficiary. The court held that the general guardian of the infant could not compel the trustee to pay the income over to the general guardian stating (p. 9): “In the present case the creator of the trust, who had a right to direct how the trust should be executed, designated plaintiff [trustee] as the one to apply the income to the use of the infant cestui qui trust, and so long as the trustee retains its office it is its right and duty to comply with this direction. ’ ’
I find it quite difficult to distinguish the two cases. I do not think the distinction is that in the New York Trust Co. v. Black case the beneficiary was an infant while in the Gasquet v. Pollock case the beneficiary was an incompetent. I am inclined to the view that although the court in the New York Trust Co. v. Black case purported not to overrule but to distinguish the Gasquet case, the New York Trust Co. case is so inconsistent with the Gasquet case as to leave little, if anything, of the doctrine of the Gasquet case in effect.
*597 Further, I note that the dissenting Judges in the Appellate Division in the New York Trust Go. case, apparently deeming themselves bound by the Gasquet case, expressly distinguished a case such as the case at bar where *1 there is an express direction for the trustee to apply the income for a specific purpose, namely, the education and support” of the beneficiary (178 App. Div. 4, 10) and indicated that in that situation they would agree that the trustee should not pay the income over to the guardian or committee.
Accordingly, the objection of the incompetent’s committee requesting the trustee to pay over accumulated and future income to the committee is dismissed.
The trustee asks the court to rule now as to the meaning and effect of the provision for disposition of income on the beneficiary’s death. The court deems such an application to be premature and declines to make any such ruling. The court has already indicated, however, that income accrued during the beneficiary’s lifetime belongs to the incompetent or her estate on her death.
Estate of Hammond E. Fisher
In this case the will directed the trustees “ to pay the net income thereof to or for the benefit of my daughter weedy during her natural life. My Executors and Trustees may, at any time and from time to time, in their sole and uncontrolled discretion, without any application to any court or judge, and without the permission of any beneficiary of this, my Will, invade the corpus and principal of the trust hereby created, and use moneys therefrom for the maintenance, comfort and support of my daughter weedy, including, but not in any way limited to, her education, protection, care and custody, medical and travel expenses.”
The will further provided:
‘1 third : I direct that my said Executors and Trustees shall have the full power to deal with the trust estate created hereunder for the benefit of my daughter weedy in any manner which they, in their discretion, shall deem wise, necessary or expedient, it being my intent and purpose that my Executors and Trustees may deal with such trust estate for the trust purposes with as full freedom and liberty of action as I would have in dealing with my own property if alive.
“eighth: (A) I hereby nominate, constitute and appoint J". BERTRAM WEGMAE and LOUIS ERIEDEETHAL and THE CHASE maehattae baek, a New York banking corporation, as the guardians of the person and property of my daughter weedy, and I do *598 hereby direct that the said j. Bertram weg-man, louis eriedbnthal and the chase Manhattan bank shall have full custody and tuition of such child during her minority, and full custody, control and management of all her property and funds. ’ ’
The persons thus named as guardians of the person, and property of the daughter are the same persons who are named as executors and trustees under the will.
The daughter was 17 years old at the time the will was drawn; she is now 29 years old. She had apparently been mentally ill for many years, was so ill at the time the will was drawn and is now so ill. She was judicially declared incompetent in 1963.
There is apparently no dispute that the income belongs to the daughter. Thus an opinion of the trustees ’ counsel to the trustees dated December 6, 1961 states that “it is our opinion that:
“ 1. The testator made a gift to "Wendy Fisher, as life beneficiary of the trust, of the entire income earned on the principal during her lifetime; * * *
“ 3. The trustees in any year may, in the exercise of reasonable discretion, withhold from distribution a portion of the trust income;
‘ ‘ 4. The portion of the income so withheld by the trustees will be held by them as conservators or custodians for the benefit of the owner thereof, Wendy Fisher ”.
Apparently both the committee and the trustees were and are of the opinion that no part of the income should be paid over to the committee but that it should be administered and applied by the trustees for the benefit of the daughter, and that any surplus should be held by the trustees essentially as custodians for the daughter.
However, on the annual accounting of the incompetent’s committee before the Referee in the Supreme Court, Kings County, that Referee disagreed with both the committee and the trustees, at least as to surplus income. And when the Referee’s report came before Mr. Justice Brown in the Supreme Court, Kings County, Mr. Justice Brown wrote an opinion in which he stated his view that all the income should be paid to the committee and directed the committee to apply to this court for an order directing the trustees to do so.
Unfortunately, the trustees were not parties to the proceeding in Supreme Court, Kings County and thus, they are not bound by Mr. Justice Brown’s determination. They are entitled, of course, to have the matter considered de novo by this court.
The language ‘ ‘ to pay the net income thereof to or for the benefit of my daughter ’ ’ is certainly much more mandatory and *599 would seem to leave much less to the discretion of the trustees than the language of the Lazarus will, or the language in either the Gasquet case (1 App. Div. 512 [1st Dept., 1896], affd. 158 N. Y. 734 [1899], supra) or New York Trust Co. v. Black (178 App. Div. 4 [1st Dept., 1917], affd. 223 N. Y. 703 [1918], supra). (a) The phrase “ for the benefit of my daughter ” may mean no more than “ to the use of my daughter ”, the phrase which occurred in both the Gasquet and the New York Trust Go. cases; the most common way of referring to a cestui que trust is as “beneficiary”, (b) There is no use of the word “apply”. The trustee is directed “ to pay ”. The difference is doubtless very slight; but whatever pay may mean it must at least mean pay out and not keep.
The phrase “ to or for the benefit of my daughter ’ ’ does give the trustees the discretion as to whether they shall pay all the money directly to the daughter or whether they shall pay part or all of it to some third person in payment of the daughter’s expenses or otherwise for the daughter’s benefit.
Accordingly, I hold that the trustees may pay the daughter Wendy’s expenses directly, but that any surplus income must be paid to the committee. What constitutes “surplus ” for this purpose? Obviously it does not mean any money not spent on the day received by the trustee. I think that the trustees are entitled to hold money in anticipation of expenses in the reasonably near future. As a cutoff point, I will direct that (at specified times to be fixed in the decree) the trustee shall pay to the committee all net income received by the trustee and not expended by the trustee within one year after receipt.
I confess to some uneasiness at the distinction that I am making between this case and the Lazarus case. I am making this distinction on the basis of different language in the two wills. But the fact is that the testator simply did not provide with any measure of clarity — if he thought of it at all — for the situation which has arisen, the appointment of a committee for the beneficiary. That situation is a result of the proper operation of the law and the judicial system.
Indeed once it is determined that property belongs to an incompetent absolutely, and the governing instrument does not provide with reasonable clarity for custody of the incompetent’s funds in the event of the appointment of a committee, I would suppose it would make sense for the courts whose ward the incompetent is and who appoint a committee, to define the incidents of the committeeship and to determine the essentially administrative question whether as a practical matter it is better for the committee rather than the trustee to be the custodian *600 of specific property or funds of the ward. In that context, I give particular weight to the views of Mr. Justice Brown in his capacity as the court which appointed and supervises the committee and the welfare of the incompetent, within the limits of course of the governing instrument.