Stephen **HORNER** and Martin Horner, Executors of the Estate of Dorothy M. Horner, Deceased

v.

The **UNITED STATES.**

No. 175–72.

United States Court of Claims.

Oct. 17, 1973.

Martin D. Cohen, attorney of record, for plaintiff.

John E. Evans, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Gilbert E. Andrews, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFFS' ORAL MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

Plaintiffs brought this suit for refund of federal estate taxes and interest assessed thereon, in the amount of $20,758, paid by the plaintiffs on behalf of the Estate of Dorothy M. Horner, deceased, plus statutory interest thereon. The case is presently before us on defendant's motion for judgment on the pleadings and plaintiffs' cross motion, made during oral argument, for summary judgment. Reading the plaintiffs' petition and assuming the truth of the allegations made therein, there are no material issues of fact. We hold for the defendant allowing its motion for judgment on the pleadings.

The facts, as they appear from the pleadings, are as follows: Dorothy M. Horner, the decedent, (sometimes hereinafter referred to as Dorothy), was born on October 24, 1890, and died on September 14, 1969. In about 1920, she married Louis J. Horner, (sometimes hereinafter referred to as Louis), and they had two sons, Stephen and Martin. Louis died testate on May 18, 1928. By his will, Louis' interest in the partnership of H. J. Horner & Sons was bequeathed to Stephen and Martin in equal shares. Stephen and Martin each were also bequeathed a one-sixth share of Louis' residuary estate. During the minority of each child, the trustees were to distribute the income to Dorothy who would apply the same toward maintenance, support, and the education of such child. Between the ages of 21 and 25, each child was to receive income from his share directly and at age 25 was to receive an outright distribution

of such share. Dorothy was given a life estate in the remaining four-sixths of Louis' residuary estate, with the remainder at her death to pass in equal shares to Stephen and Martin, their heirs and assigns forever.

On May 29, 1928, Dorothy and two of Louis' brothers, Pierre and Harry, were made co-executors and co-trustees of Louis' estate. Pierre alone performed virtually all of those duties until his death in 1949. During this period, Dorothy's life estate was treated as being held in trust and was administered by Pierre for her benefit. After Pierre's death, Dorothy, Harry, Stephen, and Martin searched for a suitable successor to Pierre as trustee and, on February 28, 1950, Dorothy, Stephen and Martin executed a trust agreement [1] by which each transferred his entire remaining interest under Louis' will to the National Newark and Essex Banking Company of Newark, New Jersey, as trustee. Under the terms of that agreement, the trustee was empowered as follows:

D. To pay to Dorothy McGregor Horner for the term of her natural life the sum of Five Hundred Dollars ($500.00) monthly providing said principal produces said income and to pay the Federal income taxes of Dorothy McGregor Horner attributable to all the income providing there is sufficient income available for such purposes and to pay the balance of any annual income to Dorothy McGregor Horner at her written request and such annual income as shall not be requested by Dorothy McGregor Horner during the year it is collected shall be added to the principal of the fund; and upon the death of Dorothy McGregor Horner, to pay, deliver and transfer the principal and undistributed income if any to Stephen Horner and Martin McGregor Horner, their heirs and assigns forever in equal shares.

The trust fund was administered according to the terms of the February 28, 1950, agreement until Dorothy's death in 1969. It distributed to Dorothy $500 each month during that time but did not distribute to her anything in excess of that amount unless she requested such distribution in writing. During that time, the amount of income which was earned by the trust fund but not distributed to Dorothy was $170,809.13. It is accepted as true, for the purposes of the motions, that on numerous occasions, decedent actually made oral requests for additional income, which requests, not being in writing, were refused.

Some confusion has resulted as to the mental state of Dorothy from the time of Louis' death until her own demise in 1969. The plaintiffs have alleged as follows:

From the time of Louis' death until her own death on September 14, 1969, decedent was the victim of acute alcoholism. This condition frequently prevented decedent from prudently or adequately managing her own affairs; and it rendered her incapable of undertaking any such responsibility as the administration of the trust created under Louis' will.

We take this as a true and correct statement of Dorothy Horner's condition during the years involved. We note, however that the allegations do not constitute a statement that Dorothy Horner was legally incompetent.

As stated above, Dorothy's failure to make written requests for the excess over her $500 monthly payment caused, during the existence of the inter-vivos trust, a total of $170,809.13 to fall into the principal of the fund. Plaintiffs, as executors of the estate of Dorothy M. Horner, included said $170,809.13 as part of her gross estate and concurrently with the filing of the return and payment of $20,056 in estate taxes attributable to the $170,809.13 inclusion, filed a

---

1. Evidently, this 1950 trust agreement was entered into without court sanction. Whether court approval was required prior to the 1950 transaction is a question we need not decide.

claim for refund for the $20,056 together with the interest paid in the amount of $702.

The court is faced with the question of whether Dorothy's failure to make written requests for amounts in excess of $500 per month,[2] which failure automatically caused such amounts to fall into principal, constituted "transfers" of property to a trust under which she retained the right to income for life. The question must be answered in the affirmative for the Government to prevail under section 2036 of the Internal Revenue Code of 1954,[3] which provides, in relevant part:

Sec. 2036. *Transfers with retained life estate.*

(a) *General rule.*

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

\* \* \* \* \* \*

By way of preface we note our agreement with the Government that Dorothy Horner's joining with her two sons, the other beneficiaries of her husband's residuary estate, in the creation of the inter-vivos trust, is not the relevant event for our scrutiny, at least with respect to section 2036. Under the terms of the inter-vivos trust, she retained the right to receive all the trust income each year for the remainder of her life. Certainly, the formal requirement that to receive more than $500 per month a written request had to be made does not mean that Dorothy had surrendered her life estate in the testamentary trust established after her husband's death.

The 1950 transaction, however, did, in effect, set up a system whereby amounts, otherwise due Dorothy, could, by her failure to make written requests, be automatically transferred to principal. The crucial point, in the context of section 2036, was that the transfer to principal was not absolute. Dorothy's right to receive the income from the augmented trust continued until her death. Dorothy thus transferred away, but with a retained life interest, $170,809.13 of the trust income which was produced by the trust between 1950 and 1969. These are the "transfers" which are relevant to our section 2036 inquiry. Economically, we see no difference between a "transfer" by means of failure to request as compared with a hypothetical case in which Dorothy requested the money and then transferred it to the principal, retaining an income interest. The latter case would be a textbook example of the operation of section 2036(a)(1). We find that there is no fundamental difference between that case and what actually occurred.

The plaintiff would have us adopt a formal and overly technical view of the "transfer" requirement. We choose instead to adopt a liberal understanding of the term "transfer." When Dorothy failed to make a written demand for the income otherwise due her and amounts

2. For purposes of simplicity, we will refer to the $500 as the amount provided without written request. It is not necessary for purposes of this opinion to discuss the problems of a failure of the corpus to produce $500 per month or the requirement that the estate pay the federal income taxes attributable to the income paid Dorothy.

3. All references to statutory tax provisions are to the Internal Revenue Code of 1954, as amended.

were automatically added to principal, she made a transfer as fully as she would have by requesting the money and later transferring it to principal. From an economic point of view, the loophole resulting from plaintiffs' view is clear. Had Dorothy not transferred the $170,809.13 to the trust corpus, but instead had received and kept it, it would have been includible in her gross estate by virtue of section 2033. The constructive transfer to the trust, under plaintiffs' view, would result in removing the $170,809.13 from her gross estate, even though she retained the lifetime right to reap the economic benefits of that amount; that is, the income therefrom.

The case law fully supports the Government's position. In United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966), it is evident that the Supreme Court did not view the "transfer" requirement in a technical or formalistic way. In *O'Malley*, the decedent was one of three trustees of trusts which he had created. As trustee he had power to pay income to the beneficiary or accumulate the income, in which case it became part of principal. Thus, the issue for resolution was whether that trust income which over the years was added to principal was includible in the decedent's gross estate as having been transferred by him but with a retained lifetime power to designate who should enjoy the income therefrom. In holding that such income was includible in the decedent's gross estate, the Supreme Court said:

> The dispute in this case relates to the second condition to the applicability of § 811(c)(1)(B)(ii) [the predecessor of section 2036(a)(2)]—whether Fabrice [the decedent] had ever "transferred" the income additions to the trust principal. Contrary to the judgment of the Court of Appeals, we are sure that he had. * * * With respect to each addition to trust principal from accumulated income, Fabrice had clearly made a "transfer" as required by § 811(c)(1)(B)(ii). Under that section, the power over in-come retained by Fabrice is sufficient to require the inclusion of the original corpus of the trust in his gross estate. *The accumulated income added to the principal is subject to the same power and is likewise includable.* [383 U.S. at 632–633, 86 S.Ct. at 1126.] [Emphasis supplied.]

Although *O'Malley* involved what is now section 2036(a)(2), while the instant case involves section 2036(a)(1), this difference provides no basis for distinguishing the two cases. Both involve transfers of property, which are incomplete because of a retained lifetime right —be it the right to designate the persons who shall enjoy the income under section 2036(a)(2) or the right to income under section 2036(a)(1).

Finally, the fact that Dorothy, unlike the decedent in *O'Malley*, was not the original owner of the trust corpus is immaterial. The Government does not contend that Dorothy's life estate under the trust created pursuant to her husband's will is includible in her gross estate. The Government argues that the income which, had it been accepted and retained by her, would have been includible under section 2033 is includible under section 2036(a)(1) because of income rights retained despite the transfers.

In Estate of Kinney, 39 T.C. 728 (1963), the fact pattern was very similar to the case at bar. There the decedent was, for nearly fifty years, the life income beneficiary of a trust. The remainder was to pass to her heirs at law. During the period of the trust, the trustees received stock dividends, which they held in trust during the decedent's life. The will, under which the trust was created, contained no provision regarding whether such stock dividends were to be allocated to principal or income.

When the Commissioner of Internal Revenue attempted to include the stock dividends in the decedent's gross estate, the estate argued that the dividends were received and held by the trust and that the decedent never transferred the shares to the trust as required by sec-

tion 2036. The Commissioner, on the other hand, argued that since the decedent was entitled [4] to the shares as a matter of law, she made a transfer to the trust when she permitted the shares to become part of the trust corpus. In prior litigation, the local surrogate's court had determined that the decedent had elected to add the shares to the corpus of the trust. The Tax Court, in addressing itself to the question of whether a "transfer" had been made, held:

> The Supreme Court's opinion in Estate of Sanford v. Commissioner, 308 U.S. 39, 42, 43 [60 S.Ct. 51, 84 L.Ed. 20] (1939), is equally applicable here: "When the gift tax was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title." Here it is clear that decedent deliberately passed control over the stock dividends in question to the trust for the benefit of the remaindermen, retaining only a life interest in the income. We find that this is a "transfer" within the meaning of section 2036, I.R.C.1954. [39 T.C. at 733.]

Likewise, in the instant case, the decedent had a right to the entire income— $500 per month automatically and the surplus by the mere making of a written request.[5] The Tax Court in *Kinney* held that the stock dividends were includible under section 2036 because the decedent had transferred them to the principal of a trust fund in which she had the income interest for her lifetime and thereby had reserved to herself the income, for life, of the property she transferred. This is effectively the situation in the instant case. In each year that Dorothy elected to leave a portion of the income in the trust, she thereby elected to, and did, irrevocably transfer that sum to the prin-

cipal of the trust of which she was the lifetime income beneficiary. Each of those transfers, therefore, was a transfer with a retained life interest, within the meaning of section 2036(a)(1).

Reason and precedent make it clear that, for estate tax purposes, a "transfer" can be made by relinquishment of a right to property which has never actually been received. In Cerf v. Commissioner of Internal Revenue, 141 F.2d 564 (3rd Cir. 1944), a gift tax case, the taxpayer was the life income beneficiary of four trusts established by her husband. The trustees were to pay the net income to her during her life

> * * * "if she shall accept it, (the right to accept such income or any part thereof to continue in Camelia I. H. Cerf during the term of her natural life, notwithstanding one or more refusals thereof) * * *." * * * [141 F.2d at 565.]

The taxpayer later relinquished her right to income in favor of her husband and contended that no transfer had been made because the income was not hers to transfer until, and unless she accepted it. But the court held that, in spite of the taxpayer's argument that she had only received an option to accept income, in reality the trust deeds vested in the taxpayer the right to receive the income. The effect of the relinquishment of this right was characterized as follows:

> * * * By completely abandoning her control over her income rights in the trusts during Louis Cerf's lifetime, Camelia Cerf effected a transfer thereof, * * *. [141 F.2d at 566.]

The analogy to the instant case is clear. Dorothy had the right to all the income produced by the trust—a portion automatically, the rest by a mere written request. By her periodic relinquishments of the amounts which required written

---

4. Under New York law, the stock dividends involved were attributable to the income beneficiary.

5. During oral argument, plaintiffs conceded that the trust accountings show that Doro-

thy did receive amounts in excess of $500 per month when requests for such amounts were made in writing.

request, Dorothy effected "transfers" to the trust principal.

Still another case in which the relinquishment of a right has been held a "transfer" is Sexton v. United States, 300 F.2d 490 (7th Cir. 1962), cert. denied, 371 U.S. 820, 83 S.Ct. 36, 9 L.Ed. 2d 60 (1962). In *Sexton*, the decedent had been one of seven income beneficiaries of a trust established by her father and was also to share in the corpus upon termination of that trust in 1940. Just prior to the termination date, she and other beneficiaries validly extended the life of the trust. The issue was whether this action constituted a transfer by her of her share of the trust corpus with a retained right to income. The court held that it did.

\* \* \* Since the postponement prevented the beneficiaries from receiving their respective shares of the corpus we conclude that the action of postponement participated in by the decedent was a relinquishment of her property right.

\* \* \* \* \* \*

Once it is determined that decedent relinquished a property interest, there can be no doubt that the value of decedent's equitable share in the trust corpus is taxable at least under Section 2036(a)(1). Decedent affirmatively relinquished her right to receive her share in the corpus and thereby is considered to have made a transfer of her property interest in the corpus. The transfer was with a retained interest—an interest in the income of the trust for her life. This is sufficient to make the transfer includible in decedent's gross estate under Section 2036. [300 F.2d at 493.]

Plaintiffs suggest that alcoholism " \* \* \* frequently prevented decedent from prudently or adequately managing her own affairs \* \* \* " and that this factor distinguishes the cases discussed, *supra*, in which the decedents could knowledgably and expressly relinquish or waive rights. We find this ar-gument futile for several reasons. In the first place, the plaintiffs have never gone so far as to allege that Dorothy was legally incompetent. In fact, as noted in footnote 5, some written requests were actually made for amounts in excess of the $500 per month automatically provided. Secondly, even if it were established that decedent had been adjudicated an incompetent, her rights would have vested in a guardian.[6] For federal estate tax purposes, the fact that her right to income was in a guardian's hands, or that her guardian transferred a portion of the income while retaining her right to the income therefrom, would produce the same result as if she were competent and acting for herself. See City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483 (1945); Estate of Inman, 18 T.C. 522 (1952), rev'd on other grounds sub nom., In re Inman's Estate, 203 F.2d 679 (2d Cir. 1953).

Assuming still another possibility, that the decedent might have been incompetent and not been so adjudicated, there would still be no change in result. This was the very argument of the estate in the case of Hurd v. Commissioner, 160 F.2d 610 (1st Cir. 1947). The court in *Hurd* disagreed with the estate's argument that the fact of decedent's incompetency extinguished the powers which would in the typical case cause the trust property to be included in the gross estate. The court stated:

\* \* \* The statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power. The decedent may have been limited in his method by his incapacity, but it is not open to question that the power existed in his behalf, either by the trust instrument itself, or by the general law of Massachusetts; and he could have been removed. \* \* \* [160 F.2d at 613.] [Emphasis in original.]

For the foregoing reasons, we hold that decedent's failure during the nearly

---

6. See N.J.Stat.Ann. 3A:6–36 (1968) and 3A:6–41 (1953).

20-year period to make all the written requests possible for her to make for income in excess of $500 per month produced by the inter-vivos trust constituted "transfers" to the principal of the trust. Since she retained for her life the right to income, the amounts so falling into the principal are includible in decedent's gross estate pursuant to the provisions of section 2036(a)(1). Defendant's motion for judgment on the pleadings is granted, plaintiffs' motion for summary judgment is denied, and the petition is therefore dismissed.

