Kashiwa, Judge,
delivered the opinion of the court:
Plaintiffs filed this suit for the refund of federal estate taxes in the amount of $139,469.44, paid with respect to the Estate of Eleanor L. Miles, deceased, plus statutory interest thereon. The case is presently before the court on defendant’s motion for summary judgment and plaintiffs’ cross motion for summary judgment. We hold for the defendant, allowing its motion for summary judgment.
There is no genuine issue as to any material fact. Briefly stated, the facts are as follows. On November 1,1957, Eleanor L. Miles, the decedent, executed an inter-vivos trust agreement, transferring certain property to a named trustee to be held in trust according to the terms of the agreement. The terms of the 1957 agreement, as amended by the 1959 agreement, provided in pertinent part:
FIRST: The Trustee * * * shall pay or apply the net income in quarter-annual installments or oftener, to or for the use of the Grantor during the term-of her *182 life. Upon the death of the Grantor, said trust shall terminate and the principal then remaining on hand together with the accrued income thereon shall be paid, transferred and delivered to [designated beneficiaries] * * *
*
ELEVENTH: The Grantor reserves the right at any time and from time to time to withdraw any or all of the property subject to the trust hereby created and to take possession of the same, and the right at any time and from time to time to modify, alter and amend this agreement and the trust hereby created in any manner and to revoke this agreement and the trust hereby created in part from time to time or in whole at any time, by an instrument or instruments in writing, signed and acknowledged by her and delivered to the Trustee, * * *.
After the creation and amendment of the trust, the decedent was adjudicated an incompetent by the State of New York, and a committee of the person and property of the decedent was appointed in 1964. The decedent remained incompetent until her death on January 6,1966.
The trust, however, was in existence on the date of death. The value of the corpus as of the alternative valuation date was $597,011.51. This value was included by the executor in the gross estate of the decedent. The decedent’s total gross estate was $628,565.99. The amount of estate tax reported and paid was $139,469.44. But for the inclusion of the $597,011.51 value of the trust corpus, the estate tax liability would have been zero.
In determining whether the trust corpus was properly included in the decedent’s gross estate, two issues are raised for our resolution:
(1) Whether, under the trust agreement, the decedent retained a lifetime right to trust income, thereby requiring the inclusion of the corpus pursuant to section 2036[1] of the Internal Revenue Code of 1954;[2] and whether, if said in *183 come right was retained, the decedent’s incompetence prevents the inclusion.
(2) Whether decedent’s incompetence prevents the inclusion of the assets of the trust in her gross estate when, in the absence of such incompetence, those assets would admittedly be included, pursuant to section 2038,[3] because of the decedent’s retained power to modify, alter, amend, and revoke the trust.
Turning first to the issue of whether section 2036(a) (1) requires the corpus to be included in the gross estate because of a retention of an income right for life, we are initially faced with the problem of analyzing the trust agreement under New York law.
The Government argues that article First of the trust, directing that the trustee “* * * shall pay or apply the net income * * * to or for the use of the Grantor during the term of her life,” amounts to nothing more than a textbook example of a retained income right and, thus, subjects the corpus to inclusion under section 2036(a) (1). The plaintiffs, on the other hand, contend that under New York law article First created discretion in the trustee as to the application of income for the use of the grantor. The plaintiffs argue that *184 Matter of Lazarus and Matter of Fisher, 54 Misc. 2d 593, 283 N.Y.S. 2d 235 (Surr. Ct. 1967), lend support for this view.
We find no merit in the plaintiffs’ argument. Bather, the language of article First appears to us to command, in as clear language as possible, that the “net income” was to be distributed. Certainly, the mere use of the word “apply” carries no inherent implication that the trustee’s discretion was to be exercised in a determination of the amounts to be disbursed. It is our view that all the net income was required to be disbursed to the grantor directly or for her use.
The case of Lazarus, supra, is plainly distinguishable. In that case, a will created a trust for the benefit of the incompetent:
* * * “to apply the net income therefrom for the care, comfort, maintenance and support of my niece, BABETTE LEVY, for and during the term of her natural life, or, if my Trustee shall determine it to be for the best interest of my said niece, to pay over the net income from said trust fund to her at such intervals as my said Trustee shall determine not less, however, then quarter-annually.” * * * [54 Misc. 2d at 595, 283 N.Y.S. 2d at 237.]
The issue was whether the committee for the incompetent niece had the right to receive all of the net income not expended by the trustee for the niece’s care, comfort, maintenance, and support. The court held that the trust did not mandate disbursement of the net income, but, rather, gave the trustee discretion to determine how much should be paid out.
The testatrix intended the trustee, in the trustee’s own discretion, to decide whether to pay the income or to apply it directly for the care, comfort, maintenance and support of the beneficiary. And the testatrix, I think, intended to vest in the trustee discretion to determine how much of the income was necessary to be used for the care, comfort, etc., of the beneficiary. Such a discretion is implicit in any provision to apply income for such a purpose. The trustee is surely not required to spend more for the beneficiary’s maintenance, support, etc., than is reasonably appropriate and proper. And it would also *185 seem to be quite unusual for the creator of a trust to give the trustee discretion to apply income for the care, comfort, maintenance and support of the beneficiary, and to direct nevertheless, that any amount not so. needed be paid compulsorily as earned to the beneficiary. [Matter of Lazarus, supra, 54 Misc. 2d at 595-596, 283 N.Y.S. 2d at 238.]
It must be remembered that, in the instant case, article First did not directly give the trustee discretion. Kather, all the net income was to be paid or applied to or for the use of the grantor. We are loathe to read in discretion to a document when it is evident from other articles that the decedent was capable of articulating discretionary standards when she chose to do so. Article Second provides:
The trustee is authorized in Ms absolute and unrestricted discretion * * * to pay or apply from the principal of the trust fund such amount or amounts as he shall deem advisable and proper to and for the use and benefit of the Grantor without regard to income from other sources or other property which she may have. [Emphasis supplied.]
Similarly, article Seventh provides, in pertinent part: '
* * * The Trustee shall have discretion to resolve any doubts concerning the application of this paragraph or the allocation of any property between principal and income for which no express provision is made in this agreement, and his decision shall be binding on all interested^ parties. The primary concern of the Grantor in creating this trust is her own welfare and the Grantor requests the Trustee, in exercising the foregoing discre-tions, to take such fact into consideration. [Emphasis supplied.]
The language used in the will involved in Matter of Fisher, supra, directed the trustees
* * * “to pay the net income thereof to or for the benefit of my daughter WENDY during her natural life. * * *” [54 Misc. 2d at 597, 283 N.Y.S. 2d at 239-240.]
The surrogate held that surplus income had to be paid to the beneficiary’s committee as the trust language was mandatory, requiring payment of the entire net income. Plaintiffs point *186 out that the Fisher will used only the word “pay” while the Lazarus will, on the other hand, used only the word “apply.” In effect, they argue that since the trust in the instant case used the disjunctive (“pay or apply”), the rule of Lazarus governs and the discretion of the trustee prevents the application of section 2036 (a) (1). What plaintiffs neglect to point out is that the Lazarus will explicitly provided that distribution of income was a matter within the discretion of the trustee. The language of the Fisher will simply did not grant such discretion; the entire net income was to be paid out “to or for the benefit of my daughter-.” Similarly, the language of the inter-vivos trust at bar allowed for no discretion. Rather, the entire net income was to be paid or applied “to or for the use of the Grantor.” The trustee’s only discretion, if such it can be termed, was, as in Fisher, whether to pay the net income directly or apply it for the use or benefit of the beneficiary.[4] The existence of trustee “discretion” as to manner of distribution does not prevent includibility under section 2036. The plaintiffs, to prevent the inclusion, are required to show that discretion can be exercised with respect to the question of how much of the income is to be distributed to the grantor. This the plaintiffs before us have not been able to show. “Discretion” as to manner of distribution simply did not deprive the decedent, under section 2036, of “the possession or enjoyment of, or the right to the income from, the property.” If “apply” is to have any meaning in the context of Lazarus versus the “pay” in Fisher (and the Surrogate’s 'Court acknowledges that “[t]he difference is doubtless very slight,” Matter of Fisher, supra, 54 Misc. 2d at 599, 283 N.Y.S. 2d at 241), no such emphasis can be given to the word in the context of the case at bar. We view the words “pay or apply” in the instant case as merely directing various methods of distribution of the entire net income.
We hold, therefore, that the decedent’s transfer of her property to the trust was a transfer with a retained life *187 interest within the meaning of section 2086. As such, the value of the property is includible in the decedent’s gross estate. It is of no moment that the decedent had been declared incompetent as her rights to the income were exercisable by the committee which acted on her behalf. See city Bank Farmers Trust Co. v. McGowan, 323 U.S. 594 (1945); Horner v. United States, 202 Ct. Cl. 649, 485 F. 2d 596 (1973).
Plaintiffs misinterpret the effect of incompetency in the context of the incompetent’s power to alter, amend, or terminate the trust. The plaintiffs admit that without the judicially declared incompetency of the grantor, the Government would be correct in its assertion that article Eleventh, supra, creates powers which would otherwise require inclusion of the property in the gross estate pursuant to section 2038. The plaintiffs, drawing some support from Matter of DelBello, 19 N.Y. 2d 466, 227 N.E. 2d 579 (1967), and Matter of Barletta, 2 Misc. 2d 135, 150 N.Y.S. 2d 479 (Surr. Ct. 1956), argue that when the person holding the power is incompetent, the power to terminate will only be approved by a court on a showing that such a decision was required for the continued support of the incompetent. These cases involved, respectively, a Totten trust and jointly held property; and whatever the rule is in those circumstances, we believe that with respect to a normal inter-vivos trust the New York rule is distinctly and unambiguously announced in In re Fleming's Estate, 173 Misc. 851, 19 N.Y.S. 2d 234 (S. Ct. 1940). The issue in Fleming involved whether the court could authorize allowances from the principal of an incompetent’s estate for the maintenance of his niece, a relative to whom the incompetent owed no duty. The court held that
* * * the rule is well established that they [the allowances] may be made upon the theory that the incompetent would, in all probability, assume the burden if he were sane. * * * [173 Mise, at 853,19 N.Y.S. 2d at 236.]
This case, then, is firm authority for the proposition that the powers retained under article Eleventh continue to exist even though the holder of those powers is incompetent. The com *188 mittee, or guardian as tbe case may be, merely steps into the shoes of the incompetent. The decedent’s committee could have exercised those powers for whatever reason upon a finding by the appropriate New York court that the decedent, if competent, would have done so. Thus, the power to modify, alter, amend, and revoke, which is exercisable by the committee for the grantor in the case at bar, existed at the date of the grantor’s death; and the trust corpus must be included pursuant to section 2088. See, also, City Bank Farmers Trust Co. v. McGowan, supra; Horner v. United States, supra; Hurd v. Commissioner, 160 F. 2d 610 (1st Cir. 1947) ; In re Lattimore, 32 App. Div. 2d 880, 301 N.Y.S. 2d 874 (1969); Matter of Harris, 35 Misc. 2d 443, 229 N.Y.S. 2d 997 (S. Ct. 1962).
For the foregoing reasons, we hold that the corpus of the trust is includible in the decedent’s gross estate pursuant to (1) section 2036 (a) (1) due to the decedent’s retained lifetime right to income, as well as (2) section 2038(a) (1) due to her retained power to modify, alter, amend, and revoke the trust. Further, we hold that the decedent’s judicially declared incompetence prior to her death, which existed at the date of death, does not affect the inclusion of the corpus under either of these provisions. Defendant’s motion for summary judgment is granted, plaintiffs’ cross motion for summary judgment is denied, and the petition is, therefore, dismissed.

 “SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.
“(a) General Rule.
“The value of the gross estate shaU Include the value of all property to the extent of any Interest therein of -which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full con *183 sideration in money or money’s worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
“(1) the possession or enjoyment of, or the right to the income from, the property, or
“(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.”

 All references to statutory tax provisions are to the Internal Revenue Code of 1954, as amended.

 “SEC. 2038. REVOCABLE TRANSFERS.
“(a) In General.
“The value of the gross estate shall include the value of all property.
“(1) Transfers after June 22, 19S6. To the extent of any interest therein of which the decendent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent’s death.”

 “The phrase *to or for the benefit of my daughter’ does give the trustees the discretion as to whether they shall pay all the money directly to the daughter or whether they shall pay part or all of It to some third person In payment of the daughter’s expenses or otherwise for the daughter’s benefit.” [Matter of Fisher, supra, 54 Misc. 2d at 599, 283 N.Y.S. 2d at 241.]