◼ In the Matter of the Estate of JOHN H. HESCH, Deceased. WILLIAM J. CAREY et al., as Executors of JOHN H. HESCH, Deceased, et al., Respondents; ROBERT ABRAMS, as Attorney-General of the State of New York, Appellant.—Mikoll, J. Appeal from part of a decree of the Surrogate's Court of Albany County (Marinelli, S.), entered May 23, 1986, which construed the language of paragraph "fourteenth (A)" of decedent's last will and testament.

John H. Hesch (hereinafter decedent), a resident of Albany County, died testate on March 18, 1984. His last will and testament provided for specific bequests to various friends, acquaintances and charities. The residue of his estate was placed in trust with the income therefrom to be paid to decedent's mentally retarded son and sole distributee, Ronald J. Hesch, for life. Petitioners are the trustees of said trust. The will also provided that upon the son's death, the trust was to terminate with fixed sums of money paid to seven named charities. The remaining corpus was to be distributed in equal shares to three other charities.

This proceeding was instituted by petitioners, as executors of decedent's estate, to have Surrogate's Court construe the provisions of paragraph fourteenth (A) of decedent's last will and testament, which reads: "To sell all my real and personal property and to invest and reinvest the proceeds thereof and to pay from the income therefrom, or from the Corpus of the Trust such sums as may be necessary for the support, maintenance, housing and comfort of my son RONALD JOHN HESCH, as my trustees shall deem adequate, for the duration of his

natural life." It appears that the Attorney-General's office had issued an informal opinion that decedent's son was entitled to the income earned by the residuary trust *only* on a "needs" basis. However, the Department of Taxation and Finance interpreted the will to entitle decedent's son to all the income earned by the trust regardless of whether he "needed" it.

In Surrogate's Court, petitioners, as trustees, contended that paragraph fourteenth (A) required them to distribute all the income from the residuary trust to decedent's son. The Attorney-General (hereinafter respondent), appearing on behalf of the ultimate charitable beneficiaries, argued that the will was too clear for construction, that the language in the paragraph in dispute clearly and unequivocally required petitioners to use their discretion in determining the amount to be paid to the life income beneficiary based upon a showing of need, and that any excess income not deemed "necessary" by petitioners be paid over into the corpus of the trust for subsequent distribution to the remaindermen.

In its decision, Surrogate's Court determined that the will was ambiguous and required construction. The court concluded that the intention of decedent was to provide for his son and found that the words "to pay" meant "to pay out and not keep". Accordingly, the court required petitioners to pay the income in full for the benefit of decedent's son. By decree dated May 23, 1986, the court ordered that the trust income be paid to decedent's son and that petitioners would be under no responsibility to justify the income distribution. This appeal by respondent ensued.

The decree of Surrogate's Court, insofar as it is appealed from, should be affirmed. The provision of the will in dispute was ambiguous and the construction placed thereon by Surrogate's Court was proper. The argument of respondent that the instrument was not ambiguous is not persuasive. Two State agencies considered the will and interpreted it differently.

In construing ambiguity in a will, courts should glean the intent of the testator "not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" *(Matter of Fabbri,* 2 NY2d 236, 240). Surrogate's Court performed that task here through the use of extrinsic evidence, and determined that decedent's intent was to provide for the well-being of his retarded son *(see, Matter of Biviano,* 57 AD2d 1002). Surrogate's Court also properly relied on the canon of construction which holds that where two interpretations of a given provision of a will are

possible, one favoring those of the blood of the decedent and the other favoring strangers to the blood, the former will be adopted if possible *(Matter of Werlich,* 230 NY 516; *Clark v Cammann,* 160 NY 315).

It was not error for Surrogate's Court to interpret the use of the words "to pay" to mean "pay out and not keep" *(see, Matter of Lazarus,* 54 Misc 2d 593; *see also, Matter of Startz,* 142 NYS2d 574). Paragraph fourteenth (B) of the will reads, in part: "Upon the death of my son, RONALD JOHN HESCH, the trust shall cease and terminate and the corpus of trust *and any accumulated interest or income* shall be distributed as follows [to various charities]" (emphasis supplied). However, paragraph fourteenth (B) continues, as follows: "8. The remainder of the Corpus of said fund to be divided equally between the Womens Board of Childs Hospital * * * Memorial Hospital * * * Sacred Heart Church * * * equally share and share alike." No mention is made in the latter paragraph of accumulated interest or income. Thus, it cannot be said that Surrogate's Court did complete violence to the wording of the will, as respondent contends, in resolving apparent conflicts in the will and in arriving at its decision to limit the term "necessary" to pay out of the corpus only.

The will is silent to the handling of any "undistributed income" during the life of decedent's son. There is no provision to add undistributed income to the corpus of the trust prior to the son's death. It appears that there was never any intent to have undistributed income prior to the death of decedent's son, a fact consistent with Surrogate's Court's interpretation that all income goes to decedent's son.

Decree affirmed, without costs. Kane, J. P., Main, Mikoll, Levine and Harvey, JJ., concur.