OPINION OF THE COURT
Edmund A. Calvaruso, J.
Procedural History
This proceeding was commenced by the filing of a petition for judicial settlement of the final account of Chase Manhattan Bank. The petition and accounting by the trustee were filed, and all necessary parties were served with a citation pertaining to the judicial settlement of this matter.
Objections to the accounting were filed by St. John Fisher College and the Lutheran Church of the Incarnate Word. The objectants are remainder beneficiaries of Trust B, the trust in question. Objections were also filed by Audrey Cooper, Esq., New York State Attorney General’s Office, on behalf of the same charitable remaindermen.
Answers to the objections were filed by the trustee, as well as by individual distributees of the estate of Kathleen Pioch, LaBounty, Carr, Salyer, Hasert and Hallen, and separately by Hyman. The administrator of the estate of Kathleen Pioch, Frank Iacovangelo, also filed a response to the objections.
In addition, distributee Hyman has filed a petition for attorney’s fees, and the other distributees have filed a cross petition against St. John Fisher College and the Chase Manhattan Bank. Answers to these petitions have been filed. Each of the parties has had the opportunity to submit original, supplemental and reply memoranda of law, and each has been considered by the court.
Statement of Facts
In the 1970’s, A. Charles Pioch (settlor) established two inter vivos trusts. The first was executed on December 20, 1973 and *825 was funded on January 24, 1974 with various investments having a fair market value of approximately $400,000. This was a charitable remainder annuity trust (hereinafter Trust A). The second trust, the custodial trust (hereinafter Trust B), was also established in December 1973. It is this Trust B that is the subject of this judicial settlement proceeding.
Trust A, which is not the subject of this proceeding, provided for quarterly annuity payments of approximately $6,000 to the settlor, and, upon his death, directed that the annuity payments be paid to Trust B during the lifetime of his daughter, Kathleen Pioch. Upon the death of Kathleen Pioch, the remainder of Trust A, if any, passed to St. John Fisher College.
Trust B was a revocable trust until the death of the settlor. Upon his death, Trust B became irrevocable. Trust B provides that upon the settlor’s death, if he were survived by Kathleen:
“The trust shall continue for the benefit of said Kathleen Pioch, and the Trustee shall apply the income and so much of the principal as in its discretion it shall deem necessary, for the support, maintenance and general welfare of said Kathleen Pi-och during her life. The Trustee shall pay, so far as possible, all specific bills for said Kathleen Pioch’s living expenses, thus making certain that her rent, her utilities, her food, clothing and medical expenses are paid by the Trustee directly. Said Kathleen Pioch shall not be given any large sums of money but only a small allowance by the Trustee every week to meet her personal needs.”
Upon the death of Kathleen, Trust B directs the trustee to pay over and distribute the principal of said trust with 75% to St. John Fisher College and 25% to the Lutheran Church of the Incarnate Word.
In July 2000, after the death of Kathleen Pioch, the trustee distributed to the estate of Kathleen Pioch the sum of $526,533.25 from Trust B. Kathleen died intestate, and the Public Administrator, Frank Iacovangelo, was appointed to administer her estate. After payment of the requisite administration expenses and debts, the balance was distributed to her intestate distributees.
Discussion
The principal thrust of the objections to the accounting herein is that the distribution to the estate of Kathleen Pioch was *826 improper. It is asserted by the charities ¡that the payments from Trust A to Trust B should have beenj treated in Trust B as receipts of principal (EPTL 11-2.1 [a] [1] [A]), and would then pass to the charities upon her death.
The objectants further argue that even if the receipts from Trust A could properly be treated as income, the restrictions in Trust B relative to distribution mandate that income was to be accumulated, and that any accumulated income should have been paid to the charities upon the death of Kathleen. They cite Matter of Cheney (85 Misc 2d 66 [Sup Ct, Nassau County 1976]) as authority that a discretionary trust implies a directive to accumulate income for the remaindermen.
The objectant charities point out that Trust B provides in article III that it shall be “construed and regulated in all respects by the laws of the State of New York.” They assert that there is no reference in Trust B to any of the Internal Revenue Code’s charitable trust requirements as Trust B itself was not intended to be a charitable trust. ¡
In the opinion of the charities, as set forth in their memorandum of law, the settlor’s estate plan could be “distilled into the following sentence: Provide for the needs of my daughter during her lifetime, and if there are any assets left upon her death, pay them to the Charities.” j
The trustee sets forth that the primary intent of the settlor was to be sure that his daughter, Kathleen Pioch, was taken care of during her lifetime. This was to be accomplished by her custodial trust. The trustee argues that to fully understand the intent of the settlor, one must look to the content of both Trust A and Trust B. The primary goal of Mr. ¡Pioch was to provide a continual flow of income for his daughter.
There can be no argument that the custodial trust, Trust B, was established to benefit Kathleen. It is the sole purpose of the trust during her lifetime. In Trust A, reference is clearly made to Trust B as being for Kathleen’s benefit. (Trust A ¶ 4 [B].) In order to receive the most favorable tax treatment, the annuity from Trust A had to be received by or applied to the needs of Kathleen. It should be noted that Trust A specifically stated “the Trustee has the right to amend or modify the provisions of this Trust Agreement as may be deemed; necessary or desirable for the sole purpose of assuring that the ¡trust hereby created is a Charitable Remainder Annuity Trust described in Section 664 (d) of the Internal Revenue Code of 1954. . . .”
*827 Compliance with the Internal Revenue Code mandates that the annuity payments from Trust A must be for the benefit of an individual and ultimately pass to that individual or his or her estate. The payments from Trust A were Kathleen’s property. Since the annuity payments were income and since Kathleen was entitled to the income in the custodial trust, it was proper for the trustee to pay the accumulated income to her estate.
Contrary to the position set forth by the objectants, the trustee argues that there was no implied direction to pay accumulated income and then pay it to the charities. Since the custodial trust directed all income be paid to Kathleen, the trustee opines that the question of accumulation of income was never considered by the settlor. Any income remaining in Trust B upon the death of Kathleen was her property which had simply not been distributed and which was payable to her estate. Both trusts proceeded on that basis, and, in addition, Kathleen paid income taxes on all the annuity payments to Trust B.
The distributees of Kathleen point out that Trust B, the custodial trust, was not a discretionary trust as to income as dealt with in Cheney (supra). Moreover, even the Cheney court appeared to favor distribution to blood relatives, rather than “a stranger to the testator’s blood.” (Cheney at 70.) Distributees also cite Matter of Hesch (133 AD2d 994 [3d Dept 1987]) for the proposition that given two possible interpretations of a trust, that favoring “blood” will be adopted.
It has long been the rule that in matters of construction the intent of the settlor be given great weight. This is only just, since by the very act of creating a trust, the settlor has evidenced his/her intent to regulate the distribution of current assets into the future.
Fundamental to the claims of the objectants to account offered by the trustee of Trust B is the claim purportedly supported by Cheney that even if payments to Trust B from Trust A were income, any accumulated income must be payable to the remaindermen and not the estate of Kathleen. There is simply no support for that position in the trust documents, nor is there evidence that this was the settlor’s intent, nor any ambiguity that would compel the court to set aside the position of the trustee.
Whether income is paid immediately to Kathleen or accumulated for later payment does not change its character. The same court that decided Cheney, seven years later in Matter of *828 Hopkins (119 Misc 2d 218, 220 [Sur Ct,. Nassau County 1983]), held that “[w]here discretion is vested in the trustee to apply income, the retention of part of the income by him does not constitute a void accumulation.” Judge Radigan then goes on to say, “Any unexpended income remains the property of the income beneficiary.” (At 220; see also Bloodgood v Lewis, 209 NY 95 [1913]; Hamilton v Drogo, 241 NY 401 [1926]; Matter of Post, 145 Misc 794 [Sur Ct, Suffolk County 1932].)
Similarly, objectants’ claim that the payments of income from Trust A to Trust B should have been treated as principal are without support in the documents which the court is called upon to interpret. The court notes that there is no specific direction in Trust B as to the classification of the annuity payments from Trust A. The annuity payments from Trust A must be treated as income to Trust B and/or Kathleen to continue the treatment of Trust A as a charitable remainder annuity trust. Any other treatment by the trustee would have been a breach of its fiduciary duty to the trusts, and violative of the specific direction from the settlor to maintain the tax status of Trust A.
Nor does the court find any directive to accumulate income for payment to the charities. Rather, it seems clear that all income from Trust A was properly classified as income to Trust B, and consequently the property of Kathleen and her estate.
Counsel for the distributees of the estate of Kathleen Pioch have each requested attorney’s fees for their service in this proceeding. The law is well settled that counsel fees may be paid when the actions of counsel have been a benefit to the estate. The proceeding before this court does not involve the settlement of the estate of Kathleen' Pioch and the work performed by counsel has been done solely for the benefit of the individual distributees.
Such legal fees are payable by the clients personally. (Matter of Gates, 120 AD2d 890 [3d Dept 1986]; Matter of Baxter, 196 AD2d 186 [4th Dept 1994], lv denied sub nom. Matter of Seaman, 84 NY2d 808 [1994]; Matter of Frankenstein, Sur Ct, Monroe County, Aug. 28, 2002, File No. 2000 DT 00297.)
Decision
Based upon all of the above, the objections are dismissed, the petition for judicial settlement is granted, fees and disbursements therein requested are approved; the request for attorney’s *829 fees by counsel for distributees of Kathleen Pioch is denied; and the remaining petitions and cross petitions are dismissed.